Argued and submitted April 23, affirmed July 20, 2001

## REST-HAVEN MEMORIAL PARK
### and Charles Wiper III,
*Respondents,*

*v.*

## CITY OF EUGENE,
*Petitioner.*

2000-094/104; A113176

28 P3d 1229

Glenn Klein argued the cause for petitioner. With him on the brief were Emily N. Jerome and Harrang Long Gary Rudnick P.C.

Bill Kloos argued the cause and filed the brief for respondent.

Before Deits, Chief Judge, and Brewer, Judge, and Van Hoomissen, Senior Judge.

DEITS, C. J.

.

## DEITS, C. J.

The City of Eugene seeks review of a Land Use Board of Appeals (LUBA) decision remanding Eugene Ordinance No. 20194. The ordinance prohibits placing pipes or fill in the city's open waterways. The city asks that we reverse LUBA's holding that the city was obliged to apply Statewide Land Use Planning Goal 5 when adopting the ordinance. We affirm.

The city's ordinance was adopted on April 24, 2000, as part of Chapter 6 of the city's code, which is entitled "Environment and Health." Chapter 6 is not part of the zoning code, but its provisions impose controls on construction in and around open waterways.[1] The stated purpose of the ordinance is

"to establish interim protection for constructed and natural open waterways that provide multiple stormwater benefits to the entire community. The protection established in these sections shall remain in effect until the city completes its Goal 5 process for wildlife habitat values and incorporates the results, along with the stormwater conveyance and water quality treatment functions, into a comprehensive set of open waterway protection measures. Open waterways provide such benefits as storm drainage and flood control, filtration and treatment of stormwater pollutants, and habitat for aquatic and other wildlife species." Eugene Code 6.650.

Before LUBA, respondents, Rest-Haven Memorial Park and Charles Wiper III, challenged the city's failure to apply Goal 5[2] when adopting the ordinance. Specifically, respondents argued to LUBA that the city failed to follow

---

[1] The ordinance defines an "open waterway[ ]" broadly to mean "a natural or human-made swale, creek, stream, open channel, ditch or other similar water feature, that has a defined and identifiable channel with slopes, that is predominantly of earthen material, and that has the specific function of conveying and/or storing stormwater runoff." Eugene Code 6.655(1).

[2] OAR 660-015-0000(5). Goal 5 is the "Natural Resources, Scenic and Historic Areas, and Open Spaces" goal. The goal requires protection of natural resources and conservation of scenic and historic areas and open spaces. Fulfilling that mandate includes a requirement that local governments develop inventories of natural resources including riparian corridors, wetlands and wildlife habitat.

OAR 660-023-0250(3), a Land Conservation and Development Commission (LCDC) rule, setting out the circumstances under which Goal 5 must be considered when a local planning jurisdiction adopts a post-acknowledgment plan amendment (PAPA).[3] In relevant part, the rule provides:

"(3)  Local governments are not required to apply Goal 5 in consideration of a PAPA unless the PAPA affects a Goal 5 resource. For purposes of this section, a PAPA would affect a Goal 5 resource only if:

"(a)  The PAPA creates or amends a resource list or a portion of an acknowledged plan or land use regulation adopted in order to protect a significant Goal 5 resource or to address specific requirements of Goal 5;

"(b)  The PAPA allows new uses that could be conflicting uses with a particular significant Goal 5 resource site on an acknowledged resource list; or

"(c)  The PAPA amends an acknowledged UGB and factual information is submitted demonstrating that a resource site, or the impact areas of such a site, is included in the amended UGB area."

The city acknowledged before LUBA that it did not apply Goal 5 when it adopted the ordinance. It was the city's position, however, that it was not obliged to do so because the ordinance was not adopted for the purpose of protecting significant Goal 5 resources. LUBA disagreed, holding that the ordinance was adopted to regulate *all* open waterways more stringently than before the adoption of the ordinance and that some of the open waterways were listed by the city as significant Goal 5 resources. LUBA explained: "It is reasonably clear that the open waterways that are the subject of the disputed ordinance overlap significantly with the drainageways that are included on the city's Goal 5 inventory." After reviewing other Goal 5 implementing rules, LUBA concluded that, in adopting the ordinance, the city needed to but had

----

[3] OAR 660-023-0010(5) defines a PAPA as:

"a 'post-acknowledgement plan amendment.' The term encompasses actions taken in accordance with ORS 197.610 through 197.625, including amendments to an acknowledged comprehensive plan or land use regulation and the adoption of any new plan or land use regulation. The term does not include periodic review actions taken in accordance with ORS 197.628 through 197.650."

failed to comply with Goal 5 and the rules implementing the goal.

On appeal, the city argues that LUBA misread OAR 660-023-0250(3). The city argues that the rule requires a showing of compliance with the goal only when the ordinance that is created or amended is one that is adopted *in order to* "protect a significant Goal 5 resource or to address specific requirements of Goal 5." The city insists that its ordinance was not adopted to protect significant Goal 5 resources but was adopted for the purpose of protecting the stormwater conveyance function that the waterways serve. The city concedes that the ordinance may have an incidental protective effect on some significant Goal 5 resources but asserts that, because the ordinance was not adopted for that purpose, it does not come within the scope of OAR 660-023-0250(3).

In arguing that Goal 5 and LCDC's rule are applicable to the city's action, respondents rely on the fact that the city listed drainageways as significant Goal 5 resources. They point to a comprehensive plan working paper entitled "Natural Assets and Constraints: Water," in which the city identified certain water areas, including drainageways, as significant Goal 5 resources. Further, respondents rely on the statement of purpose in the ordinance cited above to support their view that the ordinance was adopted, in part, to provide protection while the city completes its Goal 5 process; in other words, to provide protection for an identified significant Goal 5 resource. Respondents contend that the fact that the ordinance also provides protections for other than significant Goal 5 resources does not take the ordinance out of the scope of OAR 660-023-0250(3) and allow the city to avoid applying Goal 5.

We agree with LUBA that, in fact, the challenged ordinance does provide protection to significant Goal 5 resources. Further, the plain language of the statement of purpose of the rule makes it clear that one of the purposes of the ordinance is to provide interim protection for open waterways, some of which are identified Goal 5 resources. According to the statement of purpose, the protection is to continue "until the city completes its Goal 5 process for wildlife habitat

values and incorporates the results, along with the storm-water conveyance and water quality treatment functions, into a comprehensive set of open waterway protection measures." *See* ORS 174.020; *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

Nothing in OAR 660-023-0250(3) suggests that it excuses compliance with Goal 5 for those local ordinances that have multiple purposes, only one of which is to protect significant Goal 5 resources. An ordinance may have more than one purpose, as this one apparently does. So long as one of the purposes of the ordinance was to protect Goal 5 resources and no other provision of the law permits the city's action without compliance with OAR 660-023-0250(3), the rule is applicable. LUBA correctly concluded that the city did not properly apply Goal 5 in its adoption of Ordinance No. 20194. LUBA's remand of the ordinance to the City of Eugene to permit the city to apply Goal 5 was correct.

Affirmed.