Argued and submitted January 3, affirmed in part, reversed in part, and
remanded April 3, petition for review denied July 25, 2013 (353 Or 867)

Jim HATLEY,
*Petitioner,*

*v.*

UMATILLA COUNTY,
*Respondent,*

*and*

BLUE MOUNTAIN ALLIANCE,
Dave Price, and Richard Jolly,
*Intervenors-Respondents below.*

Land Use Board of Appeals
2012017, 2012018, 2012030;
A152777

301 P3d 920

Bruce W. White argued the cause and filed the brief for
petitioner.

Michael C. Robinson argued the cause for respondent. With him on the brief were Corinne S. Celko and Perkins Coie LLP.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

NAKAMOTO, J.

**NAKAMOTO, J.**

Petitioner seeks judicial review of a final order of the Land Use Board of Appeals (LUBA), in which LUBA affirmed Umatilla County's (the county) enactment of two ordinances, Ordinances 2012-04 and 2012-05.[1] Those ordinances, which affect conditional uses of petitioner's property, were adopted in response to LUBA's remand in *Cosner v. Umatilla County*, ___ Or LUBA ___ (LUBA Nos 2011-070, 2011-071, 2011-072, Jan 12, 2012), an earlier case in which petitioner participated. On appeal, petitioner advances two assignments of error. First, petitioner argues that LUBA erred in determining that, in Ordinance 2012-05, the county's protections of threatened and endangered fish and its restrictions on development of Wind Power Generation Facilities (WPGFs) on highly erodible soils did not require the application of Goal 5, a statewide land use planning goal. Second, petitioner contends that LUBA erred in determining that his challenge to the two-mile setback requirement for WPGFs in Ordinance 2012-04 was foreclosed on the basis of invited error or, in the alternative, waiver. For the reasons stated below, we affirm in part and reverse in part.

Petitioner owns 1,926 acres of undeveloped property in an exclusive farm use (EFU) zone in the Walla Walla River Sub-basin of Umatilla County. His property is subject to a lease for development of WPGFs. His property has flat ridge tops that are surrounded by slopes and drained by tributaries in the Walla Walla River Sub-basin. The sloped areas are likely to fall within the county's classification of "highly erodible soils."

To provide context for one of the issues on review, we begin by giving a brief overview of the requirements of Goal 5 and Goal 5's applicability to a post-acknowledgment plan amendment (PAPA).[2] Goal 5 is a statewide land use planning goal to protect natural resources and conserve

---

[1] Intervenors in the LUBA proceedings—Blue Mountain Alliance, Dave Price, and Richard Jolly—did not participate in this appeal.

[2] A PAPA includes "amendments to an acknowledged comprehensive plan or land use regulation and the adoption of any new plan or land use regulation" in accordance with ORS 197.610 to 197.625. OAR 660-023-0010(5).

scenic, historic, and open space resources. OAR 660-015-0000(5). Pursuant to OAR chapter 660, division 16, local governments must conduct three tasks to comply with Goal 5. First, local governments must inventory key resource sites. OAR 660-016-0000. Then, local governments must identify conflicting uses with the inventoried Goal 5 resource sites and determine the "economic, social, environmental and energy" (ESEE) consequences of allowing those conflicting uses for those resource sites. OAR 660-016-0005(1). Last, based on its determination of the ESEE consequences, the local government must develop a "program to achieve the Goal." OAR 660-016-0010.

Local governments are not required to comply with Goal 5 when considering a PAPA unless the PAPA "affects a Goal 5 resource." According to OAR 660-023-0250(3), there are three ways a PAPA can affect a Goal 5 resource:

"(a)  The PAPA creates or amends a resource list or a portion of an acknowledged plan or land use regulation adopted in order to protect a significant Goal 5 resource or to address specific requirements of Goal 5;

"(b)  The PAPA allows new uses that could be conflicting uses with a particular Goal 5 resource site on an acknowledged resource list; or

"(c)  The PAPA amends an acknowledged [Urban Growth Boundary] and factual information is submitted demonstrating that a resource site, or the impact areas of such a site, is included in the amended [Urban Growth Boundary] area."

In this case, petitioner's dispute with the county began in 2011, when the county adopted an ordinance that, in petitioner's view, was a PAPA that the county had adopted without complying with Goal 5, as required by OAR 660-023-0250(3). In 2011, the county adopted Ordinances 2011-05 to 2011-07, which amended the county's conditional use standards and added new restrictions to WPGFs in EFU zones. In *Cosner*, petitioner intervened in an appeal to LUBA, challenging all three of the county's 2011 ordinances. Petitioner contended that one of them, Ordinance 2011-07,

was a PAPA because the county added section 11 to Umatilla County Development Code (UCDC) 152.616(HHH) to provide additional standards for WPGFs in the Walla Walla watershed. Ordinance 2011-07 provided, in part:

"(11)   Walla Walla Watershed.

"Lands located within the Walla Walla Sub-basin East of Highway 11 shall be subject to additional standards. The purpose of these criteria is to prevent impacts to the following: inventoried Goal 5 resources, highly erodible soils (as defined by the Oregon Department of Agriculture), federally listed threatened and endangered species, and the Critical Winter Range. The standards are also designed to protect sensitive streams and to be consistent with the Clean Water Act.

"(A)   There shall be no construction of project components, including wind turbines, transmission lines and access roads on soils identified as highly erodible. The highly erodible soils are those soils identified by the Oregon Department of Agriculture as highly erodible.

"(B)   The application shall demonstrate that the [WPGF] and its components, wind turbines, transmission lines, and roads, will not conflict with existing significant Goal 5 Resources within the Walla Walla Sub-basin.

"(C)   The application shall demonstrate that the [WPGF] and its components will be setback a minimum of two miles from streams and tributaries that contain Federally listed threatened and endangered species, and, that the project will generate no runoff or siltation into the streams.

"(D)   The application shall demonstrate that the [WPGF] and its components will not be located within the Critical Winter Range."

(Underscoring omitted.) Petitioner contended that, because Ordinance 2011-07 amended the county's land use regulations for WPGFs on EFU zones and affected Goal 5 inventoried resources, the county was required to comply with Goal 5's inventory and conflicting use ESEE analysis requirements.

The two other ordinances petitioner challenged, Ordinances 2011-05 and 2011-06, did not affect Goal 5 inventoried resources and instead concerned setbacks for WPGFs. Petitioner's challenge to those ordinances focused on their constitutionality. The county's previous conditional use standard in section 6 of UCDC 152.616(HHH) required WPGFs to be set back a minimum of 3,520 feet from property zoned for residential use. In Ordinance 2011-05, the county significantly changed the setback requirement by imposing a two-mile setback from any urban growth boundary, with the possibility of a waiver if the city council of the affected city authorized a lesser setback. Similarly, Ordinance 2011-06 imposed a two-mile setback from any rural residence, but allowed a waiver if the affected landowner recorded a written waiver allowing a lesser setback. Petitioner contended in *Cosner* that, by allowing city councils or private landowners to "waive" the setbacks requirements, those two ordinances were an unlawful delegation of legislative authority.

Petitioner's challenges were successful. In *Cosner*, LUBA remanded the 2011 ordinances that amended sections 6 and 11 of UCDC 152.616(HHH) for the county to address three problems. First, LUBA remanded Ordinances 2011-05 and 2011-06 because the two-mile setback waiver provisions in each ordinance violated the delegation clause of Article I, section 21, of the Oregon Constitution. Second, LUBA concluded that, under Ordinance 2011-07, the county had amended the program to achieve Goal 5 by adopting additional measures to protect Goal 5 inventory resources without complying with Goal 5, as required by OAR 660-023-0250(3). LUBA remanded Ordinance 2011-07 for the county to address the requirements of Goal 5, *i.e.*, to conduct the inventory and ESEE analysis described in OAR 660-023-0040(2) to (5) and to adopt the appropriate findings. Lastly, LUBA remanded for the county to address whether all three ordinances were consistent with several county comprehensive plan policies regarding energy.

On remand, the county addressed the problems identified in *Cosner* by passing two new ordinances in 2012 that are relevant to the issues on review. In Ordinance 2012-04, the county imposed an absolute two-mile setback from

urban growth boundaries and rural residences, deleting the two waiver provisions that LUBA had found were unconstitutional in *Cosner*.[3]

In Ordinance 2012-05, the county sought to avoid the applicability of Goal 5 by deleting any express references to Goal 5 resources from section 11 of UCDC 152.616(HHH).[4] In the county's findings for Ordinance 2012-05, the county

---

[3] Ordinance 2012-04 provides, in part:

"(6) *Standards / Criteria of Approval.* The following requirements and restrictions apply to the siting of a [WPGF]:

"Setbacks. The minimum setback shall be a distance of not less than the following:

"(1) From a turbine tower to a city urban growth boundary (UGB) shall be two miles, unless a city council action authorizes a lesser setback. The measurement of the setback is from the centerline of a turbine tower to the edge of the UGB that was adopted by the city as of the date the application was deemed complete.

"(2) From turbine tower to land zoned Unincorporated Community (UC) shall be 1 mile, unless the landowner of the land zoned UC authorizes by written waiver a lesser setback and the waiver is recorded with the county deed records.

"(3) From a turbine tower to a rural residence shall be 2 miles, unless the landowner of the rural residence authorizes by written waiver of a lesser setback and the waiver is recorded with the county deed records. For purposes of this section, a 'rural residence' is defined as a legal, conforming dwelling existing on the parcel at the time an application is deemed complete. The measurement of the setback is from the centerline of the turbine tower to the centerpoint of the residence."

(Emphasis and strikethrough in original.)

[4] Ordinance 2012-05 provides, in part:

"(11) Walla Walla Watershed.

"Lands located within the Walla Walla Sub-basin East of Highway 11 shall be subject to additional standards. The purpose of these criteria is to prevent impacts to the following: inventoried Goal 5 resources; highly erodible soils (as defined by the Oregon Department of Agriculture), *and* federally listed threatened and endangered species, and the Critical Winter Range. The standards are also designed to protect sensitive streams and to be consistent with the Clean Water Act.

"(A) There shall be no construction of project components, including wind turbines, transmission lines and access roads on soils identified as highly erodible. The highly erodible soils are those soils identified by the Oregon Department of Agriculture as highly erodible.

"(B) The application shall demonstrate that the Wind Power Generation Facility and its components, wind turbines, transmission lines, and roads, will not conflict with existing significant Goal 5 Resources within the Walla Walla Sub-basin.

"(C) The application shall demonstrate that the [WPGF] and its components will be setback a minimum of two miles from streams and tributaries that

stated that "it does not wish to amend its Goal 5 program and will adopt Section 11 on remand by striking subsections (B) and (D) in their entirety." Subsections (B) and (D) required that an applicant demonstrate that the WPGF would not conflict with "existing Goal 5 Resources" and would not "be located within the Critical Winter Range," a specific inventoried Goal 5 resource in the county's comprehensive plan (the plan). At the same time, the county also deleted parts of section 11 that identified the purpose of the regulation as preventing "impacts" to "inventoried Goal 5 resources" and "the Critical Winter Range." The county did not alter remaining subsections of section 11 related to the impacts of WPGFs on highly erodible soils and federally listed threatened and endangered species.

Petitioner appealed the county's decision adopting the 2012 ordinances to LUBA, challenging the amendments to section 6 and section 11 of UCDC 152.616(HHH). Petitioner argued, among other things, that Ordinance 2012-05 was adopted to protect Goal 5 resources but the county had failed to address the Goal 5 requirements. Petitioner also argued that the two-mile setback and other restrictions on WPGFs in Ordinance 2012-04 were preempted by state laws that encourage and govern renewable energy, an argument petitioner had not raised in his challenge to the two 2011 ordinances concerning setbacks for WPGFs.

In its final order, LUBA affirmed the county's action. LUBA ruled that "the county did not err in failing to apply the Goal 5 rule to the remaining restrictions on developing highly erodible soils and within two miles of streams with federally listed species." In making its determination, LUBA reasoned:

"There is no dispute that highly erodible soils and streams with federally listed species are not inventoried Goal 5 resources in the county. Petitioner argues however that the restrictions on developing on highly erodible soils

contain Federally listed threatened and endangered species, and, that the project will generate no runoff or siltation into the streams.

"(D) The application shall demonstrate that the Wind Power Generation Facility and its components will not be located within the Critical Winter Range."

(Strikethrough, emphasis, and underscoring in original.)

or within two miles of streams with federally listed species will have the secondary effect of protecting at least some riparian and fish habitat areas that are inventoried Goal 5 resources.

"*** The county clearly did not intend to protect a significant Goal 5 resource. As the findings supporting Ordinance No. 2012-05 reflect, the county clearly did not intend to adopt any restriction 'in order to protect' any inventoried Goal 5 resource, or as an amendment to the county's program to protect any Goal 5 resource. The county's intent, presumably, was to protect highly erodible soils and federally listed species. The fact that such protections may have the unintended effect of providing additional protection to some of the riparian and fish habitat areas listed in the county's Goal 5 inventory is not sufficient, in our view, to constitute an amendment to 'a portion of an acknowledged plan or land use regulation adopted in order to protect a significant Goal 5 resource,' for purposes of OAR 660-023-0250(3)(a)."

In addition, LUBA rejected petitioner's challenge regarding the two-mile setback and other restrictions on WPGFs for two reasons. First, LUBA concluded that petitioner's argument was "akin to invited error" because petitioner, in *Cosner*, had argued that those two waiver provisions to the two-mile setback requirements in Ordinances 2011-05 and 2011-06 were unconstitutional and must be stricken, and the county on remand consequently deleted those waiver provisions because LUBA had found them to be unconstitutional. LUBA concluded that "[p]etitioner cannot argue that the setback reduction provisions are unconstitutional and then, when those provisions are deleted on remand, turn around and argue that the deletion creates conflicts between state statutes and other provisions that were unchallenged in the first appeal."

Second, LUBA determined that, even if petitioner's argument was permissible, his argument could have been raised in *Cosner*, but was not, and therefore was waived under *Beck v. City of Tillamook*, 313 Or 148, 831 P2d 678 (1992) (holding that, when a record is reopened on remand, the "parties may not raise old, resolved issues again[,]" meaning issues that "LUBA affirmed or reversed on their merits"). In response to petitioner's argument that the waiver

doctrine does not apply to legislative land use decisions, LUBA concluded that it had applied that waiver doctrine to legislative decisions, citing *DLCD v. Douglas County*, 27 Or LUBA 129, 143 (1999), for support.

Petitioner seeks judicial review of LUBA's final order regarding Ordinances 2012-04 and 2012-05. We review LUBA's order to determine whether the order is "unlawful in substance or procedure[.]" ORS 197.850(9). Under ORS 197.835(7)(a), LUBA is required to reverse or remand an amendment to a land use regulation or the adoption of a new land use regulation if "[t]he regulation is not in compliance with the comprehensive plan[.]"

Petitioner assigns error to LUBA's determination that the county's protection of federally listed threatened and endangered fish and restrictions on development of WPGFs on highly erodible soils did not require compliance with Goal 5. In petitioner's view, Ordinance 2012-05 adds protections to inventoried Goal 5 resources in the Walla Walla River Sub-basin and therefore, under OAR 660-023-0250(3)(a), the county was required to comply with Goal 5. Petitioner also assigns error to LUBA's determination that he was precluded from challenging the two-mile setback requirement in Ordinance 2012-04. According to petitioner, his argument was neither "invited error" nor waived under the "law of the case" waiver doctrine. We address petitioner's assignments related to each ordinance in turn.

## I. ORDINANCE 2012-05

As previously noted, OAR 660-023-0250(3) sets out three ways in which a PAPA can affect a Goal 5 resource. At issue in this case is OAR 660-023-0250(3)(a), which states that a county is required to comply with Goal 5 if the PAPA amends a "land use regulation adopted in order to protect a significant Goal 5 resource." Petitioner contends that the county adopted Ordinance 2012-05 to protect a significant Goal 5 resource and therefore was required to comply with Goal 5.

In *Rest-Haven Memorial Park v. City of Eugene*, 175 Or App 419, 424, 28 P3d 1229 (2001), we determined

whether an amendment to a land use regulation was adopted to protect a city's Goal 5 resource. In that case, the city adopted an ordinance that prohibited pipes or fill material in all of the city's open waterways that provided various storm water benefits, such as water drainage. *Id.* at 421. The petitioner argued that the city's ordinance was a PAPA that protected a Goal 5 resource because the city's open waterways included drainageways that the city had inventoried as significant Goal 5 resources. *Id.* at 423. We agreed with LUBA that the city's protection of open waterways had significant overlap with the protection of the drainageways. *Id.* We noted that one of the purposes of the ordinance was to provide interim protection to open waterways, including the drainageways, until the city completed its Goal 5 process. *Id.* We ultimately concluded that, "[s]o long as one of the purposes of the ordinance was to protect Goal 5 resources and no other provision of the law permits the city's action without compliance with OAR 660-023-0250(3), the [Goal 5] rule is applicable." *Id.* at 424. Thus, to determine whether an amendment to a land use regulation is adopted to protect a Goal 5 resource, we must look to the purpose of the ordinance as guidance.

Relying on *Rest-Haven*, petitioner argues that at least one purpose of the ordinance is to protect Goal 5 resources. In petitioner's view, the county is trying to protect Goal 5 resources by (1) requiring a two-mile setback from "streams and tributaries that contain [f]ederally listed threatened and endangered species"; (2) prohibiting WGPFs to be located on "highly erodible soils"; and (3) protecting "sensitive streams." Petitioner does not argue that "federally listed species" and "highly erodible soils" are themselves inventoried Goal 5 resources, but argues that the restrictions on those resources will have a significant effect on fish habitat and vegetative riparian habitat, both of which are Goal 5 resources. We address petitioner's arguments regarding federally listed species and highly erodible soils in turn.

A. *Federally listed threatened and endangered fish*

There is no dispute that the county's plan lists fish habitat and riparian vegetation corridors as inventoried

Goal 5 resources and that Ordinance 2012-05's express purpose is to prevent impacts to federally listed fish *species*. However, petitioner contends that Ordinance 2012-05's protection of federally listed species can occur only through the protection of *fish habitat*, namely, sensitive streams, and so Ordinance 2012-05 was adopted to protect Goal 5 resources.

To support his argument, petitioner relies on statements in the plan and in the county's Technical Report, which is incorporated in the plan, coupled with references to streams in the ordinance. The Technical Report designates certain fish and wildlife habitats as "sensitive habitat," meaning "a land or water area where sustaining the natural resource characteristics is important or essential to the production and maintenance of fish or wildlife." The plan notes that the Oregon Department of Fish and Wildlife generally considers all riparian vegetation located within 50 feet of a stream bank as "important habitat." In addition, the plan identifies "sensitive areas" for fish production as significant inventoried Goal 5 resources. The Technical Report identifies "sensitive areas" as the "rivers and streams," "lakes, reservoirs and ponds[,]" and "[h]eadwater areas" listed in Table D-XIII of the report.

Petitioner notes that the introductory paragraph of Ordinance 2012-05 states that its standards are designed to protect "sensitive streams," echoing the references to "sensitive" habitat and areas of fish production in the Technical Report and the plan. Petitioner also points to subsection (B) of Ordinance 2012-05, which prohibits runoff to streams and tributaries that contain federally listed fish to support his assertion that the county intended to protect federally listed fish species through protecting *stream segments*, not through protecting the fish species themselves.

Petitioner further contends that there is a substantial overlap between the county's protection of the inventoried fish habitats (sensitive areas) under Goal 5 and the stream segments that contain federally listed fish species under Ordinance 2012-05. To support his argument, petitioner relies on the county's findings for Ordinance 2011-07, remanded by LUBA in *Cosner*, where the county indicated

that the "Walla Walla Watershed contains two species listed under the Endangered Species Act—Bull Trout and Steelhead." According to petitioner, those two federally listed species inhabit segments of the Walla Walla River and Couse Creek, which are inventoried Goal 5 resources. Petitioner argues that Ordinance 2012-05 amended section 11 to protect a significant Goal 5 resource because the ordinance protects a subset of the county's inventoried Goal 5 stream segments.

In response, the county argues that Ordinance 2012-05 did not amend a land use regulation adopted to protect a significant inventoried Goal 5 resource or to address specific requirements of Goal 5. The county argues that it amended Section 11 of 152.616(HHH) on remand to delete any reference to inventoried Goal 5 resources and, in its findings, expressly stated that "it does not wish to amend its Goal 5 program." The county contends that, although Ordinance 2012-05 may have an unintended effect of furthering the objectives of Goal 5 by protecting habitat of federally listed species in the Walla Walla Sub-basin, the county did not intend to protect fish habitat resources in their entirety. The county argues that, unlike the ordinance in *Rest-Haven* that protected open waterways, including all inventoried Goal 5 drainageways, Ordinance 2012-05 does not specifically protect all inventoried Goal 5 fish habitats. Because only a few streams in the Walla Walla Sub-basin contain federally listed fish species, the county asserts that any overlap between protections in the ordinance for federally listed fish species and inventoried Goal 5 fish habitat is *de minimis*.

As noted, whether the county must address Goal 5 pursuant to OAR 660-023-0250(3)(a) when it adopted Ordinance 2012-05 depends on whether the county created or amended a land use regulation *in order to protect* a Goal 5 resource. We agree with petitioner that the county intended to protect "federally listed threatened and endangered species" by requiring additional standards to protect habitat of federally protected fish species in the Walla Walla Sub-basin. Ordinance 2012-05 specifically states that the additional standards are designed to "protect *sensitive streams* and to be consistent with the Clean Water Act."

However, for a number of reasons, we disagree with petitioner that the ordinance's express reference to sensitive streams triggers the application of Goal 5.

First, the county specifically stated that its purpose in adopting the 2012 ordinance as it was worded was to avoid changes to its Goal 5 program. In its findings on remand for Ordinance 2012-05, the county states that it is "not required to readopt Section 11 in its entirety on remand" and now finds that "it does not wish to amend its Goal 5 program."

Second, the county's stated intent is reflected in the changes it made to section 11. The county adopted Ordinance 2012-05 by deleting portions of section 11 that listed purposes referring to Goal 5 inventoried resources generally and Critical Winter Range in particular. The county also deleted subsections (B) and (D) of section 11 that provided additional standards to prevent impacts to Goal 5 resources and Critical Winter Range. The remaining provisions in section 11 relate only to "federally listed threatened and endangered species" and "highly erodible soils," neither of which are Goal 5 resources. As a result, the ordinance amending section 11 does not "create or amend" a land use regulation that directly protects Goal 5 resources.

Third, Ordinance 2012-05 does not indirectly protect a Goal 5 resource. According to its plain language, the purpose of Ordinance 2012-05 is limited to protecting *sensitive streams* that contain federally listed fish species and not *all sensitive areas* in the Walla Walla Sub-basin. The Technical Report, incorporated in the plan, designates *sensitive areas* for fish protection as inventoried Goal 5 resources, only some of which are "rivers and streams." Within those listed as sensitive streams, only some are within the Walla Walla Sub-basin and contain federally listed fish species. There is no indication in the Technical Report that a substantial overlap exists between sensitive streams containing federally listed fish species and the sensitive areas in the Walla Walla Sub-basin.

This case is distinguishable from *Rest-Haven*. In *Rest-Haven*, we concluded that the city intended to protect a significant Goal 5 resource because the ordinance was specifically designed to protect open waterways that provided

various storm water benefits, such as storm drainage, as stated in the city code, and the open waterways included the drainageways that the city had inventoried and identified as significant Goal 5 resources. *Id.* at 423. Because one of the purposes of the ordinance was to protect significant Goal 5 resources, the city was required to comply with the requirements of Goal 5. *Id.* at 424. In this case, however, Ordinance 2012-05 does not protect all inventoried fish habitats in the Walla Walla Sub-basin, but rather protects a small subset of that Goal 5 resource. Neither the language of OAR 660-023-0250(3) nor case law supports petitioner's assertion that a county must comply with Goal 5 if an ordinance creates or amends a land use regulation that indirectly affects a small subset of a Goal 5 resource. Unlike in *Rest-Haven*, the subject of the disputed ordinance in this case does not "'overlap significantly'" with the inventoried Goal 5 resources. *See Rest-Haven*, 175 Or App at 422 (quoting LUBA's observations as to the relationship between the open waterways protected in the ordinance and the inventoried drainageways). As a result, we conclude that Ordinance 2012-05's protection of federally listed threatened and endangered fish species was not adopted to protect inventoried fish habitat or riparian vegetation resources in the county's Goal 5 program.

B. *Highly erodible soils*

Petitioner next makes a similar argument that Ordinance 2012-05's protection of highly erodible soils was adopted to protect sensitive streams. According to petitioner, subsection (B)'s requirement of a two-mile setback of WPGFs from streams and tributaries that contain federally listed species and prohibition of runoff and siltation into those steams shows that the ordinance protects sensitive stream segments by preventing erosion from highly erodible soils. Petitioner contends that the Technical Report and the plan suggest that protection of sensitive fish habitat and riparian vegetative habitat occurs partly through prohibiting runoff and siltation into streams. In response, the county argues that because highly erodible soils are not listed as inventoried Goal 5 resources and because Ordinance 2012-05 was

not adopted to protect fish habitat resources in their entirety, the ordinance does not protect a Goal 5 resource.

We disagree with petitioner's contention that the prohibition on construction of WPGFs on highly erodible soils was adopted to protect fish habitat or riparian vegetation habitat for two reasons. First, under subsection (A) of section 11, the county's absolute prohibition on construction of WPGFs on highly erodible soils applies irrespective of whether those soils are located near streams that contain federally listed fish species. Although subsection (B) of section 11 prohibits runoff and siltation, those restrictions are separate from the restrictions for highly erodible soils. Second, petitioner's contention relies on a series of inferences: highly erodible soils cause erosion in streams, federally listed fish reside in some of those streams, streams are fish habitat, and fish habitat is an inventoried Goal 5 resource. Even if the county's protection of highly erodible soils was adopted to protect the habitats of federally listed fish species, it was not adopted to protect even a significant number of inventoried fish habitats. As we previously concluded, Ordinance 2012-05's protection of a small subset of fish habitat is insufficient to establish that the county enacted the ordinance to protect a Goal 5 resource. 256 Or App at 104-05. Accordingly, we conclude that Ordinance 2012-05 was not adopted to protect a Goal 5 resource and the county was not required to comply with Goal 5.

## II.   ORDINANCE 2012-04

Petitioner next assigns error to LUBA's determination that he had waived his argument that the two-mile setback provision in Ordinance 2012-04 was preempted by state statutes regarding renewable energy. To recap, in *Cosner*, petitioner had argued that the two 2011 ordinances concerning setbacks for WPGFs, which allowed a city council or neighboring landowner to waive the two-mile setback, were unconstitutional, but he did not contend that the setbacks were preempted. Only after the county on remand deleted those waiver provisions from UCDC 152.616(HHH) through adoption of Ordinance 2012-04 did petitioner raise the issue of preemption. Based on petitioner's arguments in *Cosner*, LUBA concluded that petitioner's preemption

argument was either "akin to invited error" or that petitioner waived his preemption argument under the "law of the case" waiver doctrine articulated in *Beck*.

We first address waiver and the parties' arguments concerning whether the "law of the case" waiver doctrine applies to the county's legislative land use enactments in this case. Petitioner contends that the "law of the case" waiver doctrine applies to quasi-judicial decisions, not legislative action. In *Beck*, the Supreme Court determined the scope of judicial review of LUBA's land use decision when the petitioners, in an earlier proceeding, had appealed a local land use decision to LUBA, prevailed in part and received a remand back to the local government, and later appealed the local government's new decision on remand to LUBA. 313 Or at 150. In deciding the scope of judicial review, the Supreme Court initially determined whether the petitioners' second appeal was part of the same case as the earlier proceeding. *Id.* at 151. The court held that, in a quasi-judicial proceeding, when (1) a local government decision is appealed to LUBA, (2) LUBA issues an order remanding that decision, (3) the local government conducts a further proceeding and issues a new order, and (4) the new decision is appealed to LUBA, then the two LUBA appeals are "two phases of the same case." *Id.* The Supreme Court then addressed whether appellate courts can review issues that LUBA decided in the same case but that were not challenged in the first appeal to LUBA. The Supreme Court held that, when LUBA remands a case for further proceedings, the parties are limited to "new, unresolved issues" relating to those remand instructions and cannot raise any "issues that LUBA affirmed or reversed on their merits, which are old, resolved issues." *Id.*

In support of its holding, the Supreme Court relied on four statutes. First, the Supreme Court stated that the effect of *former* ORS 197.835(9) (1992), *renumbered as* ORS 197.835(11) (1995) ("[T]he board shall decide all issues presented to it when reversing or remanding a land use decision."), was that the local government's authority on remand was limited to addressing issues that require further exploration. 313 Or at 151-52. Second, the court relied on ORS

197.850(1) ("Any party to a proceeding before [LUBA] * * * may seek judicial review of a final order issued in those proceedings.") for the proposition that a party may seek judicial review of all of LUBA's final orders, including orders remanding land use decisions. *Id.* at 152-53. Third, the Supreme Court determined that the effect of ORS 197.763(7) ("When a local governing body * * * reopens a record to admit new evidence or testimony, any person may raise new issues which relate to the new evidence[.]"), a statute governing quasi-judicial hearings, was that when a record is reopened on remand, a party may raise "new, unresolved issues" that relate to new evidence. *Id.* at 153. Lastly, the Supreme Court concluded that the effect of *former* ORS 197.830(10) (1992) ("Issues [before LUBA] shall be limited to those raised by any participant before the local hearings body" as provided in ORS 197.763.)[5] was that, if a record is reopened on remand, then a subsequent appeal to LUBA is limited to "new, unresolved issues" raised on remand, not issues that LUBA "affirmed or reversed" in the earlier appeal. *Id.* at 153-54. Under *Beck*, a petitioner in a quasi-judicial proceeding is required to appeal issues to LUBA in the first instance, without waiting to raise them in a subsequent appeal of the local government's decision on remand.

Petitioner argues that, because the underlying proceeding in this case was legislative and not quasi-judicial, LUBA is not precluded from reviewing his preemption argument on the merits. Petitioner does not attempt to distinguish the Supreme Court's holding in *Beck*. Instead, petitioner makes a statutory argument. Petitioner cites ORS 197.835(11)(a) for the proposition that LUBA is required to "decide all issues presented to it." Petitioner also cites ORS 197.835(3) ("Issues [before LUBA] shall be limited to those raised by any participant before the local hearings body as provided by ORS 197.195 [(limited land use decisions)] or 197.763 [(local quasi-judicial land use hearings)], whichever

---

[5] In 1995, the legislature removed that language from ORS 197.830(10) (1992), *amended by* Or Laws 1995, ch 595, § 3. However, in 1995, the relevant language in ORS 197.830(10) (1992) could also be found in ORS 197.835(3) ("Issues shall be limited to those raised by any participate before the local hearings body as provided by ORS 197.915 or 197.763.").

is applicable.").[6] In petitioner's view, that statute's limitation of LUBA's scope of review to issues that the parties raised to the local government expressly and solely applies to quasi-judicial proceedings and limited land use decisions. In response, the county argues that the Supreme Court's holding in *Beck* is broad enough to apply to both legislative land use decisions and quasi-judicial proceedings and that petitioner's distinction is untenable.

In its order, LUBA stated that it has applied *Beck* or the "law of the case" waiver doctrine to legislative decisions, citing *DLCD v. Douglas County*, 37 Or LUBA 129, 143 (1999) (noting that the petitioner's failure to challenge the county's population projection in the first appeal precluded a challenge to that issue on a subsequent appeal of the county's decision on remand). We note, however, that the county has not cited, nor have we found, any other LUBA opinions that have applied the "law of the case" waiver doctrine to legislative decisions. Instead, LUBA has applied that waiver doctrine numerous times to appeals in quasi-judicial

---

[6] The statute cited by petitioner, ORS 197.835(3), contains the same statutory language the Supreme Court relied on in *Beck*. However, ORS 197.835(3) and, by incorporation, ORS 197.763, together establish a modified "raise it or waive it" doctrine, another waiver doctrine created by statute. The "raise it or waive it" rule requires parties to preserve issues in local proceedings. *Pliska v. Umatilla County*, 240 Or App 238, 244, 246 P3d 1146 (2010), *rev den*, 350 Or 408 (2011). LUBA has recognized that the rule "represents a quid pro quo" whereby local governments must, among other things, give "broader and more detailed notice of [quasi-judicial land use] hearing[s] * * * and making evidence * * * and staff reports available" and, in exchange, participants are required to raise issues during the local proceedings to be able to raise those issues in an appeal before LUBA. *1000 Friends of Oregon v. Benton County*, 20 Or LUBA 7, 10 (1990); *see also Morsman v. City of Madras*, 196 Or App 67, 76, 100 P3d 761 (2004) (holding that a petitioner who had not received notice as required by ORS 197.763(1) was relieved of the requirement under the "raise it or waive it" doctrine to raise constitutional issues before the city). LUBA also has recognized that the "raise it or waive it" waiver doctrine in ORS 197.835(3) and ORS 197.763 applies only to local government quasi-judicial proceedings and not to legislative land use proceedings, *see DLCD v. Columbia County*, 24 Or LUBA 32, 36 (1992) (stating that the "raise it or waive it" principle does not apply to legislative proceedings); *Parmenter v. Wallow County*, 21 Or LUBA 490, 492 (1991), *aff'd*, 114 Or App 362, 835 P2d 152, *rev den*, 314 Or 574 (1992) (same); *Roads End Sanitary District v. City of Lincoln City*, 48 Or LUBA 126, 129 (2004) (same), a distinction that we conclude also applies to the "law of the case" waiver doctrine at issue in this case, as we later discuss in more detail. We also note that the "raise it or waive it" doctrine is inapplicable in this case, either because there was no requirement to raise the preemption issue before the county to preserve the issue for appeal to LUBA or because petitioner actually raised the preemption issue before the county on remand from LUBA.

cases. It appears that, except for this case, LUBA's decision in *Douglas County* is unique. And neither this court nor the Oregon Supreme Court has applied *Beck* or the "law of the case" waiver doctrine to legislative land use decisions; thus, we decide a case of first impression in Oregon.

We conclude that there are three problems with LUBA's application of the "law of the case" waiver doctrine in this case. As previously noted, in *Beck*, the Supreme Court concluded that the two successive appeals of two quasi-judicial land use decisions in that case were "two phases of the *same case*." 313 Or at 151 (emphasis added). But this appeal is not in the same case as the appeal in *Cosner*. After LUBA remanded Ordinances 2011-05 and 2011-06 to the county in *Cosner*, the county adopted Ordinance 2012-04. Like Ordinances 2011-05 and 2011-06, Ordinance 2012-04 amends section 6 of UCDC 152.616(HHH) by establishing a two-mile setback for WPGFs from any urban growth boundary or rural residences. However, Ordinance 2012-04 is different; it does not include the two waiver provisions that LUBA determined to be unconstitutional in *Cosner*. And, Ordinance 2012-04 is a new piece of legislation that the county adopted instead of amending and readopting Ordinances 2011-05 and 2011-06. Petitioner's appeal of the new ordinance to LUBA is a different and separate challenge from petitioner's earlier appeal of Ordinances 2011-05 and 2011-06 in *Cosner*.

Second, the statutory framework that the Supreme Court relied on in *Beck* does not apply to legislative land use decisions. In a quasi-judicial or limited land use proceeding, by virtue of LUBA's scope of review in ORS 197.835(11), after the local government reopens the hearing on remand from LUBA, the parties may only raise new, unresolved issues that relate to the basis of LUBA's remand. *See Beck*, 313 Or at 152 ("The effect of ORS 197.835(9) [renumbered as ORS 197.835(11) (1995)] is to allow LUBA to narrow the scope of remand to those issues that require further exploration."). For legislative proceedings, there is no equivalent statute that requires a local government to have hearings for legislative decisions or to follow certain procedures for legislative hearings after LUBA has remanded a legislative land

use decision.[7] Thus, after LUBA remands a legislative decision, the local government can choose to amend its ordinance to address LUBA's remanded issues, can choose to adopt a completely new ordinance, or can choose not to adopt any ordinance.

Third, the Supreme Court's rationale that supported its holding in *Beck* does not necessarily apply to a legislative decision. In *Beck*, the court determined that the effect of allowing LUBA to narrow the scope of remand was to "avoid redundant proceedings" and to facilitate the legislative policy that "'time is of the essence in reaching final decisions.'" 313 Or at 152 (quoting ORS 197.805). Therefore, to ensure that land use decisions would reach finality quickly, by not having them decided piecemeal, the court required a petitioner to raise issues before LUBA in the first instance instead of raising those issues after LUBA remands a land use decision.

However, there is an important distinction between the legislative decision-making process and quasi-judicial proceedings. Generally, in quasi-judicial proceedings, the local government must address issues presented by an applicant regarding the applicant's property. Unlike a quasi-judicial decision, a legislative decision is not initiated by an applicant and instead is, generally, initiated by the local governmental body. Thus, in the legislative process, the local government is not necessarily required to make a particular decision or to adopt a particular ordinance, whereas, in a quasi-judicial proceeding, the local government is required to make a final decision on all issues presented by the applicant. The practical implication of that distinction relevant to this case is the difference in the scope of a local government's authority on remand depending on whether the matter is a quasi-judicial proceeding or a legislative decision.

After LUBA's remand of a quasi-judicial decision, when the local government reopens the hearing, the issues narrow. *Beck*, 313 Or at 152. In the legislative process, in contrast, the local government has a broad scope of authority on remand. The local government's decision can apply to a

---

[7] However, in this case, the county's development code does provide public hearings for amendments to its development code. *See* UCDC 152.771.

large number of properties and people, and on remand, the local government may take any number of actions and may apply legislative priorities or considerations different than those used in developing the initial legislation. In some situations, the local government may decide not to adopt any ordinance. Thus, the principle of finality that the law of the case doctrine promotes does not apply in the way that it does to quasi-judicial proceedings. We therefore conclude that the "law of the case" waiver doctrine does not apply to legislative land use decisions.

We now turn to whether petitioner's preemption argument is precluded by the "invited error" doctrine. Under that doctrine, "a party who was actively instrumental in bringing about an alleged error cannot be heard to complain, and the case ought not to be reversed because of it." *State v. Kammeyer*, 226 Or App 210, 214, 203 P3d 274, *rev den*, 346 Or 590 (2009) (internal quotation marks omitted). Petitioner first argues that he is not precluded by the "invited error" doctrine because that doctrine applies to actions in trial courts, not to administrative proceedings, an argument we reject. *See Teamsters Local Union #223 v. Lake County*, 208 Or App 271, 278-79, 145 P3d 187 (2006) (applying the doctrine to the petitioner's conduct before the administrative law judge). However, we agree with petitioner that, if the doctrine applies, he did not invite any error through his conduct in *Cosner*.

In *Cosner*, petitioner argued that the 2011 ordinances allowing city councils or private landowners to waive the two-mile setback requirement were an unconstitutional delegation of legislative authority. In other words, petitioner sought to invalidate the two provisions, not force the county to adopt an absolute two-mile setback requirement. After LUBA remanded the 2011 ordinances, the county chose to adopt a new ordinance, Ordinance 2012-04, which imposed an absolute two-mile setback, but the county was not required to do so. In fact, the county had the authority to adopt an entirely new setback requirement or to delegate the waiver to another agency. *See Cosner*, ___ Or LUBA at ___ (slip op at 7) ("[I]t is possible that modest changes in the terms of Ordinance 2011-05 and 2011-06 could avoid any

impermissible delegation. For example, the legislature can delegate, at least to another agency of government[.]"). For that reason, we conclude that petitioner's challenge in *Cosner* did not invite the error that petitioner now challenges in this case. Accordingly, petitioner is not precluded from raising his preemption challenge to the new setback requirement in UCDC 152.616(HHH), and we remand to LUBA to allow it to decide the issue in the first instance.

Affirmed in part, reversed in part, and remanded.