Argued and submitted December 1, 2008, affirmed April 22, 2009

Annunziata GOULD,
*Petitioner,*
*and*

Steve MUNSON,
*Intervenor-Petitioner,*

*v.*

DESCHUTES COUNTY,
*Respondent.*

Land Use Board of Appeals
2008068; A140139

206 P3d 1106

Paul D. Dewey argued the cause and filed the brief for petitioner.

Laurie E. Craghead argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.*

_____

* Sercombe, J., *vice* Armstrong, J.

SERCOMBE, J.

**SERCOMBE, J.**

Petitioner Gould seeks review of an opinion and order of the Land Use Board of Appeals (LUBA). That opinion affirms Deschutes County's conditional approval of a conceptual master plan (CMP) for a destination resort proposed by Thornburgh Resort Company, LLC (Thornburgh). The county's initial approval of the CMP was appealed to LUBA and remanded for additional findings to better justify satisfaction of an approval standard on required overnight lodging accommodations. *Gould v. Deschutes County*, 54 Or LUBA 205 (2007) (*Gould I*). Petitioner then sought judicial review in this court to obtain a more extensive remand to the county for further findings on standards pertaining to the location of access roads for the development and mitigation of the development's effects on wildlife. We concluded that LUBA erred in its review of the county's determinations on wildlife impacts mitigation, affirmed on Gould's remaining assignments of error, and remanded the case. *Gould v. Deschutes County*, 216 Or App 150, 171 P3d 1017 (2007) (*Gould II*).

Following that remand, the county approved the CMP with further findings and new conditions of approval. The county imposed a condition that postponed determination of the consistency of the CMP with its wildlife impact mitigation standards until a later public hearing on a fully developed wildlife mitigation plan. Petitioner appealed the remand decision to LUBA, and LUBA affirmed the county's decision. *Gould v. Deschutes County*, 57 Or LUBA 403 (2008). On review, petitioner makes four assignments of error, all of which challenge LUBA's determinations as to the legal sufficiency of the county's condition and findings postponing review of application of the wildlife mitigation standards. We conclude that LUBA did not err in upholding the county's conditional approval and affirm.

Our earlier opinion frames the dispute:

"Thornburgh applied to Deschutes County for approval of a conceptual master plan for a destination resort. The resort, to be located on about 1,970 acres of land west of the City of Redmond, is proposed to contain 1,425 dwelling units, including 425 units for overnight accommodations

and a 50-room hotel. The resort plans also include three golf courses, two clubhouses, a community center, shops, and meeting and dining facilities. The resort property is bordered on three sides by land owned by the Bureau of Land Management. The land is zoned for exclusive farm use, but designated 'destination resort' in an overlay zone.

"State and local law contain special standards for approving destination resort developments. ORS 197.435 to 197.467; OAR 660-015-0000(8) (Statewide Planning Goal 8 (Recreational Needs)); Deschutes County Code (DCC) Chapter 18.113. The county's development code requires a three-step approval process for a destination resort. The first step is consideration and approval of a 'conceptual master plan' (CMP). DCC 18.113.040(A). The code sets out a number of detailed requirements for an application for a CMP, DCC 18.113.050, as well as extensive approval standards for the plan, DCC 18.113.060 and 18.113.070. An applicant for a CMP must submit evidence of compliance with those requirements at a public hearing. Any approval must be based on the record created at that hearing. DCC 18.113.040(A). Once the CMP is approved, it becomes the standard for staff evaluation of a 'final master plan,' the second step in the process. Any 'substantial change' in the CMP must be reviewed and approved using the same process as the original plan approval. DCC 18.113.080. The third approval step for a destination resort is allowance of components or phases of the resort through site plan or land division approvals. DCC 18.113.040(C).

"Following review of the proposed CMP by a local hearings officer, the board of county commissioners held hearings and approved the proposed CMP with conditions. The primary issue in this case concerns whether the county's adopted findings and conditions on the mitigation of the development's effects on fish and wildlife were sufficient to justify that approval.

"The development code requires the CMP application to include a description of the wildlife resources of the site and the effect of the destination resort on those resources, the 'methods employed to mitigate adverse impacts on the resources,' and a 'proposed resource protection plan to ensure that important natural features will be protected and maintained.' DCC 18.113.050(B)(1). The approval criteria include a requirement that the decision-maker 'find from substantial evidence in the record' that 'any negative

impact on fish and wildlife resources will be completely mitigated so that there is no net loss or net degradation of the resource.' DCC 18.113.070(D)."

*Gould II*, 216 Or App at 153-54.

The original county findings justified approval of the CMP because it was "feasible" to comply with the wildlife impact mitigation standard in light of a memorandum of understanding (MOU) between Thornburgh and the Bureau of Land Management (BLM). The MOU obligated Thornburgh to complete a wildlife mitigation plan, obtain approval of that plan from BLM and the Oregon Department of Fish and Wildlife, and implement the plan throughout the project. The MOU contained specific mitigation measures that could be undertaken as part of the plan. In the initial review, LUBA concluded that the county's finding of feasibility of compliance was sufficient to prove that there would be "no net loss or net degradation of the resource" under the future resource protection plan.

We held that LUBA's decision was unlawful in substance under ORS 197.850(9)(a).[1] We reasoned:

"LUBA's opinion and order was unlawful in substance for the reasons that follow. First, the county's findings were inadequate to establish the necessary and likely content of any wildlife impact mitigation plan. Without knowing the specifics of any required mitigation measures, there can be no effective evaluation of whether the project's effects on fish and wildlife resources will be 'completely mitigated' as required by DCC 18.113.070(D). ORS 215.416(9) requires that the county's decision approving the CMP explain 'the

---

[1] ORS 197.850(9) provides the standard of review used by the Court of Appeals in reviewing a LUBA decision:

"The court may affirm, reverse or remand the order. The court shall reverse or remand the order only if it finds:

"(a) The order to be unlawful in substance or procedure, but error in procedure shall not be cause for reversal or remand unless the court shall find that substantial rights of the petitioner were prejudiced thereby;

"(b) The order to be unconstitutional; or

"(c) The order is not supported by substantial evidence in the whole record as to facts found by the board under ORS 197.835(2)."

justification for the decision based on the criteria, standards and facts set forth' in the decision. The county's decision is inconsistent with ORS 215.416(9) because the decision lacks a sufficient description of the wildlife impact mitigation plan, and justification of that plan based on the standards in DCC 18.113.070(D). Second, that code provision requires that the content of the mitigation plan be based on 'substantial evidence in the record,' not evidence outside the CMP record. In this case, the particulars of the mitigation plan were to be based on a future negotiation, and not a county hearing process. Because LUBA's opinion and order concluded that the county's justification was adequate despite those deficiencies, the board's decision was 'unlawful in substance.' "

*Gould II*, 216 Or App at 159-60.

Thus, the approval was improper because the mitigation plan was not yet composed and part of the evidentiary record before the county, and therefore the necessary findings about the sufficiency of that plan could not be made. But beyond those deficiencies, we noted that the county used the wrong standard in evaluating the sufficiency of the evidence in the local government record to show consistency with the approval criteria—whether the evidence showed that compliance with the standards was "feasible."

Instead, under *Meyer v. City of Portland*, 67 Or App 274, 678 P2d 741, *rev den*, 297 Or 82 (1984), the evidentiary record of a land use decision must show that compliance with the approval standards was "likely and reasonably certain," without regard to any modification as a result of later administrative review. *Gould II*, 216 Or App at 161 (citing *Meyer*, 67 Or App at 280 n 5). We concluded:

"Thus, *Meyer* instructs that a proposed land development plan must be specific and certain enough to support findings that the proposal satisfies the applicable approval criteria. If the nature of the development is uncertain, either by omission or because its composition or design is subject to future study and determination, and that uncertainty precludes a necessary conclusion of consistency with the decisional standards, the application should be denied or made more certain by appropriate conditions of approval. Another option is to postpone the decision."

*Id.*

We also noted in *Gould II* that proof of a mere possibility of compliance, resulting in a finding that attainment of the standard is "feasible," could be relevant to justify postponement of the application of the standard to a future process, but not to extinguish the duty to apply the standard based on "substantial evidence in the record." We stated:

"In this case, the county's decision did not postpone a determination that the project complies with DCC 18.113.070(D). The county might have, but did not, postpone determination of compliance with that standard until the final master plan approval step and infuse that process with the same participatory rights as those allowed in the CMP approval hearing.[4] Instead, the county implicitly concluded (but did not directly find) that the nature of the wildlife impact mitigation plan was sufficiently certain and probable to allow a present determination of consistency with the approval criterion. LUBA found that the findings were 'adequate' to explain compliance with DCC 18.113.070(D).

"But the governing ordinance requires a *Meyer* determination of whether 'solutions to certain problems * * * are * * * likely and reasonably certain to succeed'—whether the findings and conditions of the conceptual master plan approval adequately support the conclusion that 'any negative impact on fish and wildlife resources will be completely mitigated so that there is no net loss or net degradation of the resource' as required by DCC 18.113.070(D). The adopted findings fail to make that case.

"[4] In the context of this case, a determination that a wildlife impact mitigation plan is 'feasible' might be appropriate to justify postponement of any evaluation of the application of DCC 18.113.070(D) to the plan. The determination of feasibility, however, is not an adequate substitute for an assessment of whether a specific mitigation plan actually complies with the standard."

*Gould II*, 216 Or App at 162.

On remand, the county approved the CMP and adopted its prior findings, including the finding that "it is feasible to mitigate completely any negative impact on identified fish and wildlife resources so that there is no net loss or net degradation of the resource." The county also found:

"[T]he Court of Appeals clearly stated that it is proper for the County to defer the presentation of the wildlife mitigation plan to the final master plan process, as long as a feasibility determination has been made with respect to DCC 18.113.070(D). As noted above, based on evidence in the record, the Board found in the 2006 Decision that compliance with DCC 18.113.070(D) is feasible.

"Consistent with the Court of Appeals' decision, the Board adopts condition No. 26 below, which postpones determination of compliance with DCC 18.113.070(D) until the final master plan approval step and infuses that process with the same participatory rights as those allowed in the CMP approval hearing."

The county imposed the following condition:

"Applicant shall demonstrate compliance with DCC 18.113.070(D) by submitting a wildlife mitigation plan to the County as part of its application for final master plan approval. The County shall consider the wildlife mitigation plan at a public hearing with the same participatory rights as those allowed in the CMP approval hearing."

Petitioner sought review by LUBA of the decision on remand. One of its assignments of error was that the county erred in making a determination of "feasibility" based on inadequate findings and evidence, so that postponement of the decision was not appropriate. Petitioner argued that the "feasibility" showing that was necessary to postpone a determination under DCC 18.113.070(D) meant that Thornburgh was required to show that particular wildlife impact mitigation measures were "likely and reasonably certain to succeed" under *Meyer* and that this court had held that the county earlier failed to make that showing. Thus, petitioner concluded that the postponement was not justified by the county.

On review, LUBA determined that a showing that compliance with approval standards is "likely and reasonably certain" is not necessary in order to impose a condition postponing consideration of those standards to a later hearing and that it was sufficient for the county to postpone with the condition that full public participation be preserved. LUBA held:

"For the reasons explained above, we conclude that neither *Gould II* nor *Paterson* support petitioner's position that the county must first find that it is 'feasible,' within the meaning of the second principle in *Meyer* [approval of compliance with standards at first stage of development review upon findings that compliance is 'feasible,' meaning 'possible, likely and reasonably certain to succeed'], for the destination resort to comply with DCC 18.113.070(D), before it can defer a decision concerning whether the proposed destination resort complies with DCC 18.113.070(D) to a future public process as part of FMP approval. It follows that petitioner's first assignment of error should be denied."

*Gould*, 57 Or LUBA at 416. LUBA affirmed the county's deferral of consideration of the application of DCC 18.113.070(D) to the CMP. Petitioner again seeks review.

In her assignments of error, petitioner complains that the board's order is unlawful in substance for three reasons. In her first assignment of error, petitioner argues that LUBA erred in sustaining the county's conditional approval of the CMP because there was not sufficient evidence in the local government record to show compliance with DCC 18.113.070(D). Petitioner claims in her second assignment of error that any conditional approval of the CMP that defers the application of DCC 18.113.070 must be based on a *Meyer* finding of feasibility and that LUBA erred in failing to require that finding. Finally, petitioner's third assignment of error asserts that the county's finding that compliance with DCC 18.113.070 was feasible was not supported by substantial evidence.[2] Because determination of the merits of petitioner's second and third assignments of error helps to frame the analysis of the first assignment of error, we consider them first.

Petitioner first argues that a particular showing of the feasibility of compliance with DCC 18.113.070(D) was necessary in order to postpone consideration of that approval criterion. Petitioner claims that a showing of "feasibility" is

---

[2] Petitioner's fourth assignment of error—that the postponement of consideration of the fish and wildlife standard to a later hearing will not assure that the standard is met—does not merit discussion. The condition plainly requires that petitioner "demonstrate compliance with DCC 18.13.070(D)" and that the county consider and evaluate that demonstration.

necessary to justify postponement of a determination of compliance with an approval standard and that "feasibility" means the justification required by *Meyer* for determining satisfaction of an approval standard—that compliance with the standard is "likely and reasonably certain to succeed." We agree with LUBA that a finding under *Meyer* (that the local government record shows that compliance with DCC 18.113.070(D) is "likely and reasonably certain to succeed") is not necessary to postpone consideration of compliance with the approval standard. Rather, such a finding under *Meyer* would suffice to justify final adjudication of compliance with the approval criterion, as opposed to putting that determination off for another day.

We agree, however, with petitioner's contention that a showing of feasible compliance with the wildlife mitigation standard is necessary to justify the county's decision to postpone consideration of that standard.[3] That showing of "feasibility," however, is not the same as the *Meyer* requirement. *Meyer* itself highlights the distinction between a determination that an approval criterion is met, and a conclusion that satisfaction of a standard is "feasible." In *Meyer*, LUBA had upheld the subdivision approval because the city found compliance with the subdivision approval standards to be "feasible." *Meyer*, 67 Or App at 280 n 5. This court expressly disapproved LUBA's conclusion that a showing of "feasible" or possible compliance with standards suffices to justify a local government land use decision. Instead, it is necessary that the evidentiary record show that the approval standards were met, without regard to any modification as a result of later administrative review. We noted in *Meyer*:

"For some reason, LUBA couched its discussion of this question in terms of whether or not the city found the preliminary plan proposed a 'feasible' development project. Petitioners argue that 'feasibility' cannot be the applicable

---

[3] Analysis of that issue is made more difficult by the imprecise use of the word "feasible" by the board and the county. The ordinary meaning of "feasible" is "capable of being done, executed, or effected : possible of realization." *Webster's Third New Int'l Dictionary* 831 (unabridged ed 2002). When we speak of a determination that compliance with a standard is "feasible," we mean the ordinary meaning of the word—that attainment of the approval standard is possible—and not that attainment of the standard is probable or certain.

standard because nearly any conceivable project may be feasible from an engineering perspective if enough money is committed to it. It is apparent, however, that by 'feasibility' LUBA means more than feasibility from a technical engineering perspective. It means that substantial evidence supports findings that solutions to certain problems (for example, landslide potential) posed by a project are possible, likely and reasonably certain to succeed."

*Id.* (citations omitted).

Although we agree that a *Meyer* justification is not necessary to postpone consideration of DCC 18.113.070(D), we do not agree that *no* justification is necessary. Instead, a finding that compliance with DCC 18.113.070(D) is "feasible," in the sense of a possibility of attainment, is necessary in order to justify a decision to forgo denial of the CMP and to approve it with the deferral condition. The county was obliged to justify "approval or denial" of the CMP with a statement of the relevant criteria, the relevant facts and "the justification for the decision based on the criteria, standards and facts set forth." ORS 215.416(9); DCC 22.28.010(A).[4] Petitioner and others appeared at the hearing on the CMP and argued that the application should be denied based on the record created at that hearing. ORS 215.416(9) requires that the county explain its decision that the CMP application should not be denied, but instead should be conditionally allowed. That explanation necessarily must rule out denial as the outcome required by the hearing record. Denial of an application, as opposed to postponement of consideration, is required if satisfaction of the approval criteria is not possible

---

[4] As relevant herein, ORS 215.416(9) provides:

"Approval or denial of a permit or expedited land division shall be based upon and accompanied by a brief statement that explains the criteria and standards considered relevant to the decision, states the facts relied upon in rendering the decision and explains the justification for the decision based on the criteria, standards and facts set forth."

That justification is also required by a county ordinance on land use hearing procedures, DCC 22.28.010. DCC 22.28.010(A) provides that

"[a]pproval or denial of a land use action shall be based upon and accompanied by a brief statement that explains the criteria and standards considered relevant to the decision, states the facts relied upon in rendering the decision and explains the justification for the decision based upon the criteria standards and facts set forth."

even with additional evidence. Moreover, a necessary justification for a condition of approval of a land use permit is that the condition can be met, that its satisfaction is feasible. For those reasons, a finding of feasibility—that compliance with the approval criterion is possible—explains the reason for not denying the application and imposing the condition of approval under ORS 215.416(9) and DCC 22.28.010 and is required by those policies.

The county made that finding of feasibility in justifying the condition that postponed approval of a wildlife mitigation plan. The county found that "it is feasible to mitigate completely any negative impact on identified fish and wildlife resources so that there is no net loss or net degradation of the resource." That finding is sufficient to explain the reason under ORS 215.416(9) and DCC 22.28.010(A) why the county did not deny the application and instead approved the application with the postponement condition.

Petitioner's third assignment of error is that LUBA erred in affirming the postponement because the necessary feasibility finding was not supported by substantial evidence in the record. Petitioner again argues that the "evidence and findings on remand clearly do not satisfy the *Meyer* test that solutions 'are possible, likely and reasonably certain to succeed' where the record wasn't opened and no new findings were made." We have already addressed the contention that LUBA erred in failing to require a *Meyer* finding of compliance with DCC 18.113.070(D) in order to justify conditional approval of the CMP. Thus, petitioner's complaint about lack of substantial evidence to support a *Meyer* finding is misplaced. If petitioner is arguing that the county's actual feasibility finding, which *is* necessary to justify conditional approval, is not supported by substantial evidence, that argument is unpersuasive. That finding was supported by substantial evidence in the record for the reasons stated by LUBA in *Gould I*. 54 Or LUBA at 259-60. Thus, the county's decision to conditionally approve the CMP, rather than deny the CMP application for failure to satisfy DCC 18.113.070(D), complied with ORS 215.416(9) and DCC 22.28.010.

Petitioner's first assignment of error is that LUBA's order was "unlawful in substance because it affirmed the

County readoption of the CMP final land use decision where there was not substantial evidence to determine compliance with the mandatory fish and wildlife approval standards." As we interpret that assignment of error, it raises the same issues as those that were raised in the second and third assignments of error.

LUBA did not err in affirming the county's decision on remand.

Affirmed.