Argued and submitted May 7, reversed and remanded on petition, affirmed on cross-petition August 5, 2015

Annunziata GOULD,
*Petitioner
Cross-Respondent,*

*v.*

DESCHUTES COUNTY,
*Respondent,*
*and*

LOYAL LAND, LLC,
*Respondent
Cross-Petitioner.*

Land Use Board of Appeals
2014080; A158835

362 P3d 679

Paul D. Dewey argued the cause and filed the briefs for petitioner-cross-respondent.

Robyn Ridler Aoyagi argued the cause for respondent-cross-petitioner Loyal Land, LLC. With her on the briefs were David J. Petersen and Tonkon Torp LLP.

Laurie E. Craghead for respondent Deschutes County joined the opening brief of respondent-cross-petitioner Loyal Land, LLC, Robin Ridler Aoyagi, David J. Peterson, and Tonkon Torp LLP.

Before Ortega, Presiding Judge, and Haselton, Chief Judge, and Sercombe, Judge.*

ORTEGA, P. J.

---

* Haselton, C. J., *vice* Wollheim, S. J.

**ORTEGA, P. J.**

This proceeding involves a petition and cross-petition for review of a final order of the Land Use Board of Appeals (LUBA) that remanded the declaratory ruling of the Deschutes County Board of Commissioners (the county) that a conceptual master plan (CMP) for a destination resort had been "initiated" within the county code's time limitations. In the petition, petitioner contends that LUBA erred by deferring to the county's "implausible" interpretation of a code provision that addressed whether a CMP had been "initiated." Alternatively, petitioner complains that the county's finding that the applicant was not at fault for failing to comply with conditions of approval in the CMP was not supported by substantial evidence. In the cross-petition, respondent Loyal Land, LLC (Loyal Land) maintains that LUBA failed to give the county's interpretation of another portion of the county code proper deference. We reverse and remand on the petition, and affirm on the cross-petition.

The proposed destination resort has an extensive history of litigation. For purposes of this opinion, we provide only the details necessary to understand and analyze the issues here. The Thornburgh Resort is a proposed destination resort on about 2,000 acres in Deschutes County. Under the Deschutes County Code (DCC), the approval of a destination resort requires three steps. First, the county must approve a CMP. DCC 18.113.040(A). Second, the county must approve a final master plan (FMP). DCC 18.113.040(B). And third, each element or development phase of the resort must receive additional approval through a required site-plan review or subdivision process. DCC 18.113.040(C).

Loyal Land's predecessor,[1] Thornburgh Resort Company, LLC, obtained an approved CMP from the county in May 2006. Petitioner appealed the county's decision approving the CMP to LUBA, and LUBA remanded that decision. *Gould v. Deschutes County*, 54 Or LUBA 205 (2007) (*Gould I*). Petitioner then sought our review

_____

[1] Thornburgh Resort Company, LLC, initially submitted the CMP, but filed for bankruptcy in March 2011. Loyal Land acquired the project site via foreclosure in August 2011 and succeeded to Thornburgh's rights as the permittee under the CMP.

of LUBA's decision, asking us to grant a more extensive remand than the one granted by LUBA. On review, we agreed with petitioner that LUBA had erred in part, and remanded the case. *Gould v. Deschutes County*, 216 Or App 150, 171 P3d 1017 (2007) (*Gould II*). On April 15, 2008, the county approved the version of the CMP that is at issue in this proceeding, and included 42 conditions of approval, some of which would require an approved FMP before they could be completed. Petitioner appealed that decision to LUBA, and LUBA affirmed. *Gould v. Deschutes County*, 57 Or LUBA 403 (2008) (*Gould III*). Petitioner again sought our review of LUBA's decision, and in *Gould v. Deschutes County*, 227 Or App 601, 206 P3d 1106, *rev den*, 347 Or 258 (2009) (*Gould IV*), we affirmed. Meanwhile, on October 8, 2008, the county approved Thornburgh's FMP. Petitioner appealed the approved FMP to LUBA, and LUBA remanded the county's FMP decision. *Gould v. Deschutes County*, 59 Or LUBA 435 (2009) (*Gould V*). We affirmed LUBA's remand of the FMP. *Gould v. Deschutes County*, 233 Or App 623, 227 P3d 758 (2010) (*Gould VI*). And, on August 17, 2010, LUBA remanded the FMP to the county.[2]

Under the DCC, a CMP approval, as a land use permit, "is void two years after the date the discretionary decision becomes final if the use approved in the permit is not initiated within that time period." DCC 22.36.010(B)(1).[3] DCC 22.36.020(A)(3) provides that

"[a] development action undertaken under a land use approval * * * has been 'initiated' if it is determined that: * * * Where construction is not required by the approval, the conditions of a permit or approval have been substantially exercised and any failure to fully comply with the conditions is not the fault of the applicant."

The two-year limit on Loyal Land's CMP was set to expire on November 11, 2011. Ten days before the expiration date, Loyal Land asked the county, pursuant to the county code, for a declaratory ruling that the CMP had been

---

[2] As of the time of this appeal, the county has not taken further action on the remanded FMP.

[3] DCC 22.36.010(E) provides that the time period in DCC 22.36.010(B)(1) is tolled during the pendency of all appeals.

"initiated" under DCC 22.36.020(A)(3). A hearings officer ruled that the CMP had been initiated, and the county commission declined to exercise discretionary review of that decision. Petitioner appealed the hearings officer's decision to LUBA, challenging the officer's interpretation of DCC 22.36.020(A)(3). LUBA concluded that the hearings officer had incorrectly interpreted the code provision, and remanded the matter to the county.[4] *Gould v. Deschutes County*, 67 Or LUBA 1 (LUBA No 2012-042, Jan 8, 2013) (*Gould VII*).

The issues before us in this proceeding flow from LUBA's decision in *Gould VII*. Accordingly, we pause to examine that decision. DCC 22.36.020(A)(3) requires two findings to determine if a development action authorized by a permit has been initiated: (1) whether the conditions of approval have been substantially exercised (the "substantially exercised prong"), and (2) whether, for any conditions that have not been fully complied with, the failure to comply with the conditions is "not the fault of the applicant" (the "fault of the applicant prong"). *Gould VII*, 67 Or LUBA at 19. In *Gould VII*, LUBA was tasked with reviewing the hearings officer's conclusion that, in evaluating the substantially exercised prong, the county had to consider only those conditions that could be satisfied without FMP, land division, or site plan approvals. That is, the hearings officer had concluded that, out of the 42 conditions of approval in the CMP, for purposes of determining if Loyal Land had substantially exercised the conditions of approval, the officer only had to consider the 15 conditions that she found "relevant"—*i.e.*, those conditions that did not require the applicant to acquire additional permits and approvals.

---

[4] Notably, in *Gould VII*, LUBA indicated that the hearings officer had "almost certainly" erred in concluding that subsection (3) of DCC 22.36.020(A) applied to the CMP rather than subsection (2). 67 Or LUBA at 12. Subsection (2) provides that a CMP has been initiated when "[s]ubstantial construction toward completion of the land use approval has taken place." Nevertheless, because the hearings officer and the parties had proceeded as though subsection (3) applied, and no party had assigned error to that aspect of the hearings officer's decision, LUBA limited its consideration "to petitioner's challenges to the hearings officer's application of [subsection (3)] and d[id] not further consider whether the hearings officer should have applied [subsection (2)] instead of [subsection (3)]." *Id.* at 13-14. Given that posture and the parties' arguments on review, we limit our analysis to subsection (3), and offer no opinion as to whether subsection (2) or (3) is applicable to the CMP in this case.

On appeal, LUBA disagreed, concluding that

"the hearings officer must be able to find both that the [42] conditions of approval, viewed as a whole, have been substantially exercised *and* that for any of the [42] conditions of approval where there has been a failure to fully exercise the condition, the applicant is not at fault."

*Gould VII*, 67 Or LUBA at 19 (emphasis in original). Accordingly, LUBA remanded to the county to "consider whether all of the [42] conditions of approval have been 'substantially exercised,' including those that required that the applicant seek additional permits and approvals." *Id.* LUBA clarified that the applicant need not show that "*each* of the [42] conditions must *separately* be 'substantially exercised'" but that the 42 conditions of approval, "viewed as a whole, have been substantially exercised." *Id.* We affirmed LUBA's *Gould VII* decision without opinion. *Gould v. Deschutes County*, 256 Or App 520, 301 P3d 978 (2013) (*Gould VIII*).

On remand from *Gould VII*, the hearings officer determined that Loyal Land had not initiated the CMP before it had expired. In particular, the hearings officer concluded that Loyal Land had not "substantially exercised" the 42 conditions of approval and that Loyal Land was at fault for not fully complying with many of the conditions. The county commission took discretionary review of the hearings officer's decision and rejected it, concluding instead that the CMP had been timely initiated. The county concluded that, although 19 of the 42 conditions were "fully exercised" and one additional condition was "substantially exercised," the remaining 22 conditions "required the occurrence of a contingency that did not occur by November 18, 2011." The county explained that Loyal Land had substantially exercised "100% of the conditions of approval that were relevant and necessary to initiation of the CMP." Because Loyal Land had substantially exercised 100 percent of the conditions that were "relevant and necessary to initiation of the CMP," the county decided that Loyal Land's actions "constitute substantial exercise of the conditions of approval of the CMP as a whole."

As to the fault of the applicant prong, the county concluded that Loyal Land's failure to comply with 23 conditions was "not the fault of the applicant." For each condition that Loyal Land had not fully complied with, the county noted that full compliance with the applicable condition "cannot occur until there is a final, approved FMP for the project, and that contingency has not occurred." The county further concluded that, as to the 23 conditions, Loyal Land's

"failure to fully comply with the condition prior to November 18, 2011 (including the failure to cause any contingency to full compliance to occur) is not the fault of the applicant because of the three-step process for approving destination resorts * * *."

The county explained that "[t]he two-year expiration of land use approvals under DCC 22.36.010[(B)(1)] must be applied to a destination resort CMP in a manner consistent with the three-step approval process for destination resorts created under DCC Chapter 18.113." The county claimed that, in creating the three-step process, it "never intended that the general two-year expiration of land use permits under DCC 22.36.010[(B)(1)] would require full compliance with all conditions of a CMP within two years of approval of the CMP[,]" and that, "[t]o find otherwise would effectively dismantle the three-step approval process of DCC Chapter 18.113 and make meaningful review and oversight of destination resorts impossible." The county further concluded that

"the applicant is not at fault for failing to achieve something (full compliance with all CMP conditions within two years) that: (a) was never intended by the Board; (b) would require the applicant to violate the approved phasing plan in the CMP; and (c) would be practically impossible to achieve for a complex project such as the Thornburgh Resort under the three-step approval process created by DCC Chapter 18.113."

Petitioner appealed the county's decision to LUBA, raising four assignments of error. Her first three assignments addressed the substantially exercised prong and her fourth assignment addressed the fault of the applicant prong.

In *Gould v. Deschutes County*, ___ Or LUBA ___ (LUBA No 2014-080, Jan 30, 2015) (*Gould IX*), the decision that we now review, LUBA concluded that, as to the substantially exercised prong, the county had impermissibly revisited "interpretative issues" that had been resolved by LUBA in *Gould VII*. That is, LUBA, in reviewing the hearings officer's decision in *Gould VII*, had interpreted DCC 22.36.020(A)(3) to require the hearings officer, when applying the substantially exercised prong, to consider *all* conditions of approval, not just those that could be satisfied without FMP, land division, or site plan approvals. LUBA agreed with petitioner that the "law of the case" principle set out in *Beck v. City of Tillamook*, 313 Or 148, 831 P2d 678 (1992), precluded the county commission from "revisiting" those interpretative issues on remand. LUBA further agreed that the county, in rejecting the hearings officer's decision on remand, had adopted an interpretation of DCC 22.36.020(A)(3) that was inconsistent with LUBA's interpretation of that provision in *Gould VII*. In particular, LUBA concluded that the county had avoided considering all 42 conditions as a whole; instead, the county had done what LUBA had explicitly rejected as impermissible in *Gould VII*—dismissing as unimportant conditions that required additional approvals. On that basis, LUBA remanded the county's decision. *Gould IX*, ___Or LUBA at ___ (slip op at 23).

LUBA, however, rejected petitioner's fourth assignment of error aimed at the county's decision on the fault of the applicant prong. Petitioner had argued to the county that Loyal Land was at fault for its failure to fully comply with 23 of the conditions of approval, because it (1) delayed initiating proceedings after the FMP decision was remanded to the county in August 2010, (2) failed to seek extensions of the CMP as allowed by the DCC, and (3) failed to present substantial evidence to establish that it was not at fault for failing to fully comply with the conditions of approval. Loyal Land had presented argument and evidence to the county in support of its position that, to the extent that it had not complied with certain conditions, the "fault" lay with circumstances out of Loyal Land's control, such as delays by federal agencies, the "Great Recession," financing issues, and the complexity of the three-step process. As noted, the county

had concluded that Loyal Land was not "at fault" for failing to comply with the 23 conditions that required additional approvals.

In *Gould IX*, LUBA's scope of review of the county's interpretation of the fault of the applicant prong was prescribed by ORS 197.829(1). Under that statute, LUBA must affirm a local government's interpretation of its comprehensive plan and land use regulations if the local government's interpretation "plausibly accounts for the text and context" of the provisions. *Siporen v. City of Medford*, 349 Or 247, 262, 243 P3d 776 (2010).

LUBA concluded:

"If the [county] wants to make the complexity and length of the process that is required for destination resorts in general, and this one in particular, an important consideration in finding that it is not the 'fault of the applicant' under DCC 22.36.020(A)(3) that the applicant has not fully complied with 23 of the 42 conditions of approval, there is nothing in our decision in *Gould VII* that is inconsistent with that interpretation and application of DCC 22.36.020(A)(3). While it is perhaps unusual for a county to lay the blame for an applicant's inability to comply with CMP conditions of approval on the complexity of the county's own regulatory scheme, the county's interpretation and application of the 'fault of the applicant' prong of DCC 22.36.020(A)(3) is not inconsistent with the text of DCC 22.36.020(A)(3), read in context, and it is not implausible."

*Gould IX*, ___ Or LUBA at ___ (slip op at 25-26). Accordingly, LUBA affirmed the county's interpretation of the fault of the applicant prong, and rejected petitioner's fourth assignment of error.

## PETITION

On review, petitioner argues that LUBA's final order was "unlawful in substance." *See* ORS 197.850(9)(a) ("The court shall reverse or remand the order only if it finds: The order to be unlawful in substance * * *."). In her first assignment of error, petitioner urges us to reverse LUBA's conclusion that the county's interpretation of the fault of the applicant prong was plausible. In her second assignment, petitioner contends that LUBA erred by affirming

the county's decision because the county's conclusion that Loyal Land was not at fault was not supported by "adequate findings" or substantial evidence. In particular, petitioner maintains that there is a dearth of evidence in the record and findings by the county as to whether Loyal Land was "at fault" for not using "time available to it" and "failing to obtain the five years of extensions available to it."

We begin with petitioner's first assignment. LUBA's affirmance of the county's interpretation of the fault of the applicant prong is unlawful in substance if the county's interpretation:

"(a) Is inconsistent with the express language of the comprehensive plan or land use regulation;

"(b) Is inconsistent with the purpose for the comprehensive plan or land use regulation;

"(c) Is inconsistent with the underlying policy that provides the basis for the comprehensive plan provision or land use regulation; or

"(d) Is contrary to a state statute, land use goal or rule that the comprehensive plan provision or land use regulation implements."

ORS 197.829(1). Whether the county's interpretation of its code is inconsistent with the code, or the purposes or policies underlying the code, "depends on whether the interpretation is plausible, given the interpretative principles that ordinarily apply to the construction of ordinances under the rules of *PGE* [*v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993),] as modified by *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009)." *Setniker v. Polk County*, 244 Or App 618, 633-34, 160 P3d 800, *rev den*, 351 Or 216 (2011) (internal quotation marks omitted; brackets in original). Merely because a stronger or more logical interpretation exists does not make a local government's interpretation implausible. *Siegert v. Crook County*, 246 Or App 500, 509, 266 P3d 170 (2011).

Petitioner contends that the county effectively added text to the fault of the applicant prong which exempted destination resorts from that prong. Again, DCC 22.36.020(A)(3) provides, in part, that a development action has been

"initiated" if "the conditions of a permit or approval have been substantially exercised and *any failure to comply with the conditions is not the fault of the applicant.*" (Emphasis added.) Petitioner argues that by interpreting that provision in the way that the county did—*i.e.*, that Loyal Land's failure to fully comply with 23 of the CMP conditions of approval was not its fault because of the contingent nature of those conditions and the complexity of the process for approving destination resorts—the county has created an *ad hoc* exemption for destination resorts. Petitioner explains that, if the county intended to exempt destination resorts from the fault of the applicant prong, the county must do so by amending the text of the code. In other words, the county can specify particular kinds of land use applications as exempt from a code standard, but only through text in the code—not by an *ad hoc* interpretation. Petitioner urges that the only plausible interpretation of the DCC, as written, requires the county to evaluate whether the particular destination resort applicant bears responsibility for failure to comply with contingent conditions—including the applicant's efforts to cause the contingency underlying the condition to come to fruition.

Petitioner also contends that the county's interpretation does not plausibly account for the text and context of the DCC because it was based, in part, on the faulty premise that an applicant has only two years to initiate the project. Petitioner points to DCC provisions that allow for up to five years of extensions for CMPs, so that theoretically, applicants have up to seven years to "initiate" destination resort CMPs. Petitioner argues that the county's interpretation has "interpreted out of its Code these provisions which allow the planning director to approve an additional five years to initiate a use."

Loyal Land defends the county's interpretation, explaining that it must be affirmed because the county looked at the "whole code" and harmonized the text of arguably conflicting provisions to adopt an interpretation consistent with the purposes and policies underlying the DCC. Specifically, Loyal Land contends that the county harmonized the "general" requirements of DCC 22.36.020(A)(3) with the code provisions in DCC chapter 18.113 that define

the requirements for a destination resort CMP. Loyal Land maintains that the county did not exempt destination resorts from the fault of the applicant prong but, instead, concluded that application of that code provision depends on the requirements of the specific permit under review. In this case, Loyal Land maintains that the county viewed DCC 22.36.020(A)(3) in context with DCC chapter 18.113, and concluded that DCC 22.36.020(A)(3) can be interpreted to allow for "flexibility" when assessing fault of an applicant whose CMP conditions of approval include contingencies that are unlikely to occur within the two-year limitations period.

As for petitioner's argument about the availability of extensions, Loyal Land maintains that, because extensions are discretionary and nothing in the code requires an applicant to exhaust extensions before seeking a declaration of initiation, the mere availability of extensions "is not a basis to overturn LUBA's decision."

Because it is essential to our analysis, we begin with the substance of the county's interpretation. As noted, with respect to each of the 23 conditions that Loyal Land had not fully complied with, the county concluded that

> "full compliance with [the condition] cannot occur until there is a final, approved FMP for the project, and that contingency has not yet occurred. The [county] further finds that the failure to fully comply with this condition is not the applicant's fault for that reason and for the reasons explained below under the heading 'Cumulative Findings—Failure to Fully Comply is Not the Fault of the Applicant.'"

Under that heading, the county explained that "the failure to fully comply with the condition prior to November 18, 2011 (including the failure to cause any contingency to full compliance to occur) is not the fault of the applicant *because* of the three-step process for approving destination resorts in Deschutes County as further elaborated below." (Emphasis added.) The county went on to explain:

> "The two-year expiration of land use approvals under DCC 22.36.010[(B)(1)] must be applied to a destination resort CMP in a manner consistent with the three-step approval process for destination resorts created under DCC Chapter

18.113. The three-step process was consciously created by the Board to provide a mechanism for meaningful review and oversight of very complex development projects, and in doing so the Board never intended that the general two-year expiration of land use permits under DCC 22.36.010[(B)(1)] would require full compliance with all conditions of a CMP within two years of approval of the CMP (tolled only for appeals of the CMP). To find otherwise would effectively dismantle the three-step approval process of DCC Chapter 18.113 and make meaningful review and oversight of destination resorts impossible. It would also negate the express power of the Board under DCC 18.113.050[(B)(8)] to approve multiyear phasing plans for destination resorts that exceed two years, such as the phasing plan approved for the Thornburgh Resort. Accordingly, the applicant is not at fault for failing to achieve something (full compliance with all CMP conditions within two years) that: (a) was never intended by the Board; (b) would require the applicant to violate the approved phasing plan in the CMP; and (c) would be practically impossible to achieve for a complex project such as the Thornburgh Resort under the three-step approval process created by DCC Chapter 18.113."

To begin with, we disagree with the broad premise advanced by petitioner that the county, by interpreting the fault of the applicant prong in the way that it did, entirely exempted applicants for destination resorts from that code provision. The county determined that Loyal Land was not at fault for failing to fully comply with *the conditions of approval that could not be fully complied with until there was a final approved FMP.* That is, to the extent that the county considered the complexity of the three-step approval process as a reason that Loyal Land failed to fully comply with 23 conditions, the county applied that view only to those conditions that were "contingent" on FMP approval. Accordingly, even if, as petitioner asserts, the county absolved Loyal Land of fault because of the complexity of the three-step process, it did not do so for failure to comply with *any* condition of approval; rather it has done so as to only the "contingent" conditions.

Nevertheless, we agree that LUBA erred in concluding that the county's interpretation of the fault of the applicant prong was plausible. LUBA, in rejecting petitioner's

fault of the applicant prong argument, noted that it was plausible for the county "to make the complexity and length of the process that is required for destination resorts in general, and this one in particular, an important consideration" in finding that it is not the "fault of the applicant" for failure to fully comply with the 23 contingent conditions. We agree that the county plausibly could interpret the code so that the complexity and length of the three-step process are important considerations in determining whether an applicant is at fault for failure to comply with a condition—particularly a contingent condition that requires approval of a subsequent phase in a multi-phase process. However, we understand the county to have made the complexity of the three-step process the *only* consideration in determining whether the applicant was at fault for failing to comply with those contingent conditions, and we conclude that that is an implausible interpretation of the DCC.

That conclusion is premised on the explicit text of the board's decision (*i.e.*, failure to fully comply with the conditions "is not the fault of the applicant because of the three-step process for approving destination resorts in Deschutes County") and the complete lack of findings in the county's decision as to the specific facts of this case. That is, the county's findings lack factual support as to why, in this particular instance, the complexity of the process or the specific nature of the contingent conditions precluded Loyal Land from complying with any of the contingent conditions within the required time frame. Accordingly, we are left to conclude, in the absence of such findings, that the county interpreted the code so that, for destination resort CMPs in which compliance with some conditions is contingent on FMP approval, the complexity of the three-step process is the *only* consideration in determining whether the applicant was at fault for failing to comply with those contingent conditions. We conclude that, although the complexity of the three-step process is one acceptable consideration in determining the fault of the applicant in such cases, it cannot plausibly be the only consideration. That is so because such an interpretation effectively rewrites the explicit text of the code so that a development action has been "initiated" if the conditions of the permit or approval have been substantially

exercised and any failure to fully comply with the conditions *that are not contingent on FMP approval* is not the fault of the applicant. That interpretation is inconsistent with the explicit text of the DCC, which requires the county to examine the applicant's fault as to *all* conditions of approval.

The code explicitly requires the county, when evaluating whether a development action has been "initiated," to consider the fault of the applicant for failure to comply with *the conditions*—not just those conditions that are not contingent. Therefore, the only plausible reading of that provision is that the fault of the applicant must be considered as to all conditions of approval—even the contingent conditions. However, the county's interpretation—that because the three-step process is so complex, any condition contingent on FMP approval necessarily is not the fault of the applicant—creates a blanket exemption from fault for any destination resort applicant that fails to comply with CMP conditions contingent on approval of a FMP. In doing so, the county has interpreted the code provision, which explicitly requires evaluation of the fault of the applicant as to all conditions, so that an applicant cannot be at fault for failure to comply with conditions that are contingent on FMP approval.

As noted, in a given case, the complexity of the process, the specific nature of the conditions of approval (such as conditions that would require violation of the CMP's approved phasing), and other circumstances outside of the applicant's control may indeed support a determination that the applicant was not at fault for failure to comply with conditions contingent on FMP approval. Nevertheless, it is implausible for the county to interpret the code so that an applicant is excused from fault for failure to comply with such contingent conditions solely because, in the abstract, the process is too complex. That conclusion impermissibly treats as irrelevant an applicant's responsibility for the failure of the contingency to occur.

In this case, in response to petitioner's second assignment of error, Loyal Land points to evidence and argument in the record which it asserts demonstrates that it was not at fault for the failure of the FMP approval to occur. And Loyal Land argues that that evidence supports

the county's finding that it was not at fault. However, we cannot locate anything in the county's decision which we can fairly characterize as findings on the specific evidence in the record. The county does not mention any evidence that is specific to Loyal Land's circumstances or the CMP; instead, as noted, the county appears to have based its conclusion on the fault of the applicant prong on its interpretation that the complexity of the three-step process is the sole consideration. It may be that, based on the parties' arguments and the evidence, the county could have found that Loyal Land was not at fault for its failure to secure FMP approval and comply with the contingent conditions in the CMP, but we see no indication that that is what the county did in the decision before us. The county, however, will have a chance to evaluate the evidence on that issue on remand.

We also briefly address petitioner's argument that, because the DCC provides an applicant for a destination resort an opportunity to seek extensions of CMPs for up to five years, the county's interpretation of DCC 22.36.020(A)(3) is implausible.[5] Although an applicant's failure to seek extensions that are available to it could plausibly be considered in the analysis under the fault of the applicant, we do not conclude, as petitioner seems to argue, that the only plausible interpretation of the DCC is that failure to take advantage of the available extensions means that the applicant is at fault for failure to comply with conditions contingent on FMP approval. Put another way, although the failure of an applicant to seek extensions could be considered in assessing an applicant's fault, we do not understand the county's interpretation to prohibit such a consideration.

Accordingly, we conclude that LUBA's order affirming the county's interpretation of the fault of the applicant prong is unlawful in substance, and we reverse and remand on the petition.

---

[5] LUBA noted that petitioner argued to the county that Loyal Land was "at fault" because it delayed in initiating remand proceedings after the FMP decision was finally remanded to the county on August 17, 2010, and because it failed to seek extensions of the CMP permit. LUBA merely noted that "We do not know why [Loyal Land] or its predecessor did not seek CMP extensions. [Loyal Land's] delay in initiating FMP proceedings was partially attributable to a delay in the Bureau of Land Management providing needed information to address identified shortcomings in the wildlife mitigation plan."

## CROSS-PETITION

Loyal Land's cross-petition challenges LUBA's determination that, on remand from *Gould VII*, the county erroneously "reconsidered" interpretative issues involving the substantially exercised prong that were decided by LUBA in *Gould VII* and, in doing so, reached conclusions that were inconsistent with LUBA's interpretation. LUBA determined that "interpretative issues" that it resolved in *Gould VII* could not be reconsidered by the county in "this new phase of the same case." Loyal Land contends that the county's treatment of the substantially exercised prong on remand was consistent with LUBA's interpretation in *Gould VII* and, alternatively, even if it was inconsistent, the county could interpret its code for the first time on remand even though LUBA had already done so. Loyal Land's cross-petition raises an issue of first impression that we left open in *Canfield v. Yamhill County*, 142 Or App 12, 20 n 4, 920 P2d 558 (1996): "whether a local government, on remand, may interpret its legislation differently from the way LUBA or we interpreted it * * * in remanding the decision."

A quick recap of the relevant procedural history is helpful to our discussion of this issue. As noted, when Loyal Land asked the county for a declaratory ruling that the CMP had been initiated, a hearings officer so ruled. The county declined to exercise discretionary review of that ruling, and petitioner appealed the hearings officer's ruling to LUBA, challenging the officer's interpretation of DCC 22.36.020(A)(3). Accordingly, in *Gould VII*, LUBA determined that the hearings officer had incorrectly interpreted the substantially exercised prong of DCC 22.36.020(A)(3), and remanded to the county. As we noted in discussing the petition, a governing body's interpretation of local land use laws is entitled to deference from LUBA. *See* ORS 197.829. However, a hearings officer's decision is not entitled to any deference. *Gage v. City of Portland*, 319 Or 308, 317, 877 P2d 1187 (1994). Accordingly, in *Gould VII*, LUBA reviewed the hearings officer's interpretation of the substantially exercised prong by applying the traditional methods of interpretation, and did not grant any deference to the hearings officer's interpretation. As noted, LUBA disagreed with the hearings officer's interpretation, posited its own

interpretation of the substantially exercised prong, and remanded to the county.

On remand, the hearings officer decided that, under LUBA's interpretation of the substantially exercised prong in *Gould VII*, Loyal Land had failed to substantially exercise the conditions as a whole. The county took discretionary review of that decision and, in proceedings before the county, Loyal Land urged the county to give its own interpretation of the substantially exercised prong even though LUBA had interpreted that provision in *Gould VII*. The county did so, concluding that "interpretation of the DCC is ultimately the responsibility of the [county], and since the [county] has not previously interpreted DCC 22.36.020(A)(3) it is empowered and may do so now."

Accordingly, the first question is whether the county's interpretation of the substantially exercised prong was inconsistent with LUBA's interpretation of that code provision in *Gould VII*. We conclude that it was. We agree with LUBA that the county's interpretation of the substantially exercised prong essentially avoided consideration of conditions that required FMP approval by treating them as "irrelevant." That approach was inconsistent with LUBA's decision in *Gould VII*, which directed that on remand the county should consider "whether all of the [42] conditions of approval have been 'substantially exercised,' including those that required that the applicant seek additional permits and approvals." 67 Or LUBA at 19.

The second question is whether the inconsistency of the county's interpretation matters. Loyal Land contends that the county is authorized to independently interpret the substantially exercised prong on remand even though LUBA already did so in *Gould VII*. Loyal Land argues that the county's interpretation of the substantially exercised prong, even under circumstances where LUBA has already interpreted that code provision, is entitled on appeal to deference under ORS 197.829(1).

In rejecting that argument, LUBA concluded that the law of the case principle reflected in *Beck*, counsels that interpretative issues decided by LUBA in *Gould VII* could not be revisited and resolved differently by the county on

remand. LUBA explained that "law of the case" facilitates judicial efficiency, and that if the county were allowed to revisit on remand interpretative issues decided by LUBA in an earlier phase of the case, judicial efficiency would be sacrificed. LUBA noted that, had the county adopted the hearings officer's first decision, on appeal in *Gould VII*, LUBA would have been bound to review that decision under the deferential standard of review set forth in ORS 197.829(1) and *Siporen*.

In response to LUBA's decision, Loyal Land essentially asserts that the deference principle reflected in ORS 197.829(1), as explained in *Siporen*, trumps the law of the case doctrine. Loyal Land maintains that, under *Siporen*, the county "is the final arbiter of what its own code means," that *Beck* is inapplicable to the facts here, and that, because the county never had a chance to interpret DCC 22.36.020(A)(3) before remand in *Gould VII*, the issue was not previously resolved in this proceeding. In addition, Loyal Land claims that ORS 197.829(1) prescribes the only bases on which LUBA can reverse a local land use decision, and that a county's interpretation of its code that is inconsistent with LUBA's own interpretation is not among those bases. Finally, Loyal Land asserts that judicial efficiency is not served by "forcing a local government to hear every appeal from a hearings officer to avoid losing the opportunity to interpret its own code."

In *Beck*, the Supreme Court concluded, based on statute, that issues that LUBA decided in earlier proceedings, and upon which judicial review was not sought, are not subject to review in a judicial review of a subsequent LUBA order. 313 Or at 153. "Thus, when LUBA remands a case for further proceedings, the parties are limited to 'new, unresolved issues' relating to those remand instructions and cannot raise any 'issues that LUBA affirmed or reversed on their merits.'" *Devin Oil Co. v. Morrow County*, 252 Or App 101, 112-13, 286 P3d 925 (2012) (quoting *Beck*, 313 Or at 153). After *Beck*, we explained that "[t]he overriding principle of *Beck* is that issues in land use cases must be brought to finality at the earliest available opportunity." *McKay Creek Valley v. Washington County (A79679)*, 122 Or App 59, 64, 857 P2d 167 (1993).

Obviously, *Beck* is distinct from this case. Nevertheless, the "overriding principle" of *Beck* is instructive to our analysis and, as we explain below, leads us to conclude that the law of the case doctrine should be applied in this instance.

The law of the case doctrine

"is a general principle of law *** that when a ruling or decision has been once made in a particular case by an appellate court, while it may be overruled in other cases, it is binding and conclusive both upon the inferior court in any further steps or proceedings in the same litigation and upon the appellate court itself in any subsequent appeal or other proceeding for review."

*Boise Cascade Corp. v. Board of Forestry*, 216 Or App 338, 351, 174 P3d 587 (2007), *rev den*, 344 Or 390 (2008).[6] The doctrine is "essentially one of judicial economy and judicial discretion." *State v. Metz*, 162 Or App 448, 454, 986 P2d 714 (1999), *rev den*, 330 Or 331 (2000). And it applies to the portions of a prior appellate decision that were necessary "to the disposition of the appeal" and "should be invoked to preclude parties from revisiting issues that already have been fully considered by an appellate court in the same proceeding." *Hayes Oyster Co. v. Dulcich*, 199 Or App 43, 53-54, 110 P3d 615, *rev den*, 339 Or 544 (2005) (internal quotation marks omitted).

This case has all the aspects that would normally lead to application of the law of the case doctrine. There is no dispute that the hearings officer interpreted the substantially exercised prong of DCC 22.36.020(A)(3), and that the appeal of that decision in *Gould VII* put that issue to LUBA for decision. Because the county had declined to review the hearings officer's decision, LUBA was not required to give the hearings officer's interpretation of the code provision any deference. *Gage*, 319 Or at 317 ("[T]he reasons for requiring deference to a local government's interpretation

---

[6] In *Hatley v. Umatilla County*, 256 Or App 91, 112, 301 P3d 920, *rev den*, 353 Or 867 (2013), we concluded that the law of the case doctrine is not applicable in cases involving "legislative land use decisions" because the principle of finality that the doctrine promotes "does not apply in the same way that it does to quasi-judicial proceedings."

of its own ordinance do not apply when the interpretation is that of a hearings officer."). Accordingly, LUBA interpreted the code provision and remanded to the county for consideration of whether all 42 conditions of approval had been substantially exercised, including those that required the applicant to seek additional permits and approvals. Therefore, unless the law of the case doctrine does not apply, LUBA—the appellate body in the appeal from the hearings officer's decision—made a ruling on the proper interpretation of the substantially exercised prong, and that ruling binds both the county—the inferior body—in any further proceedings in the same litigation and LUBA in any subsequent appeal.

The only question, then, is whether ORS 197.829, which prescribes LUBA's review of a local government's interpretation of its land use regulations, precludes application of the doctrine in this case. We conclude that it does not. In reaching that conclusion, we are mindful that the law of the case doctrine is intended to promote judicial economy and that, in this case, application of the doctrine furthers the overriding principle of *Beck* that issues in land use cases must be brought to finality at the earliest possible opportunity. We recognize that, at least in theory, application of the law of the case doctrine in this case could defeat the principle that ORS 197.829 is based on—*i.e.*, "when a governing body is responsible for enacting an ordinance, it may be assumed to have a better understanding than LUBA or the courts of its intended meaning." *Siporen*, 349 Or at 258. However, we find it persuasive that the county had the opportunity to secure deference for its interpretation if it had, in the first instance, exercised its discretionary review of the hearings officer's interpretation of the substantially exercised prong and adopted or altered that interpretation.[7] Accordingly,

---

[7] We are also concerned that declaring the law of the case doctrine inapplicable to LUBA proceedings that involve the interpretation of comprehensive plans and land use regulations could cause problems in the application of ORS 197.829(2). That statutory provision provides that, "If a local government fails to interpret a provision of its comprehensive plan or land use regulations, or if such an interpretation is inadequate for review, the board may make its own determination of whether the local government is correct." We have interpreted that provision so that LUBA has the choice of "performing the interpretive exercise itself" or remanding the question regarding the local regulation's meaning to the local government. *See Opp v. City of Portland*, 153 Or App 10, 14, 955 P2d 768, *rev den*, 327 Or 620 (1998). We see little to distinguish the circumstances here

the statutory scheme is set up so that the local government always has "the first bite at the apple" if a hearings officer's decision involves the interpretation of a local government's land use regulations.

In the end, we conclude that the purposes and practical realities of the law of the case doctrine counsel us to apply it in this case despite ORS 197.829. Accordingly, we affirm LUBA on the cross-petition.

Reversed and remanded on petition; affirmed on cross-petition.

---

from a circumstance where the local government fails to interpret a provision or interprets it in a manner that is inadequate for review. Although we need not decide the issue, we would be surprised if the legislature intended for LUBA's interpretation of a local land use regulation under ORS 197.829(2) to be subject to "revisitation" by the local government on remand.